IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 20, 2002 Session

## KAY GILLIAM DULIN v. MICHAEL JAY DULIN

Direct Appeal from the Circuit Court for Shelby County
No. 160153-6 R.D.     George H. Brown, Jr., Judge

No. W2001-02969-COA-R3-CV - Filed September 3, 2003

This appeal arises from a custody dispute involving parental relocation with a minor child. The lower court dismissed Father's petition to oppose Mother's relocation and granted Mother's motion to dismiss. Father raises multiple issues on appeal. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Michael Jay Dulin, *pro se*, Eads, TN

S. Denise McCrary, Stephanie M. Micheel, Memphis, TN, for Appellee

## OPINION

### Facts and Procedural History

Michael Jay Dulin ("Father") and Kay Gilliam Dulin ("Mother") were granted a divorce on December 9, 1998. A Marital Dissolution Agreement ("MDA"), wherein the parties agreed to joint custody of their minor child, was incorporated into the final divorce decree.

On August 10, 2000, Mother notified Father by letter that she intended to move to Georgia with the parties' minor child. On August 16, 2000, Father filed a Petition for Injunction, Petition to Modify Joint Custody, Petition to Modify Child Support, and Petition to Oppose Relocation of Plaintiff. A response to Father's petition was filed by Mother on October 18, 2000. In her response, Mother denied that the parties spent substantially equal time with the child.

On September 28, 2000, the trial court appointed Jill Graves Clyburn ("Ms. Clyburn") to serve as Guardian Ad Litem. Ms. Clyburn was to "investigate the best interests of the minor child"

with regard to the proposed move and the fitness of both parents. As part of her investigation, Ms. Clyburn requested that both parties submit to drug tests. The results of Mother's tests were negative, but Father tested positive for methamphetamine and amphetamine. As a result of Father testing positive for drugs, Ms. Clyburn made a motion that Father have supervised visitation pending further drug testing of Father and his new wife, Beth Dulin. The trial court entered an order on June 12, 2001 which required that Father's new wife submit to drug testing. She has refused to do so despite this order.

Approximately three weeks after Father failed the initial drug test, he voluntarily submitted to two additional tests at the Frayser Medical Center. The results of these tests were negative. Shortly thereafter, Ms. Clyburn discovered that Father may not have been the man who had taken these drug tests. Apparently Father had another person take the tests for him. This information was brought to the attention of Mother's counsel on July 30, 2001.

On August 1, 2001, the scheduled date for the hearing on Father's petitions, Mother filed a Motion to Dismiss and Other Relief. Mother's petition sought to have Father's petitions dismissed due to the fraud he apparently had committed on the court. The trial court, after hearing testimony relating to Mother's petition, granted Mother's petition. The trial court dismissed Father's petitions without conducting a hearing on his petition to oppose the move. On August 24, 2001, the trial court entered the order granting the motion to dismiss.

Father's attorney was allowed to withdraw by order entered September 14, 2001. Thereafter, on September 21, 2001, Father filed a Motion to Amend Findings and Make Additional Findings and Motion for New Trial. Subsequently, Father filed an Amended Motion to Amend findings and Make Additional Findings and Motion for New Trial on October 12, 2001.

Both of Father's motions claimed that the trial court erred due to the lack of due process he was afforded. Mother responded to both of Father's motions by denying that the trial court erred. On October 12, 2001, Mother filed a Petition to Compel Signature on Real Estate Contract and for Sale of Property, for Civil and Criminal Contempt, For Modification, For Attorney's Fees, For Guardian Ad Litem Fees, or Injunctive Relief and Discretionary Costs.

On November 2, 2001, a hearing was held on Mother's petition and on both of Father's motions. The trial court denied both of Father's motions and granted Mother's petition by order entered November 5, 2001. Thereafter, Father filed his notice of appeal on December 4, 2001. The parties raise the following issues for our review.

## Issues

1.      Did the trial court err in not setting a hearing date of October 6, 2000 and/or not entering a continuance or dismissal.

2.      Did the trial court err in allowing orders to be entered throughout this cause with no

motions having been heard, no apparent filing fees paid and/or allowing motions to be heard on the same day with no notice thereof, and entering Consent Orders bearing one person's signature consenting for all parties, thereby denying due process.

3. Did the trial court err in entering a Rule 37 Order against a non-party spouse with no notice of service and no representation or contact with the court and using this order against Father; and did the trial court err in refusing and/or failing to find Mother's attorney in contempt as an officer of the court for having attested to the fact that notice was served.

4. Did the trial court err in accepting a Consent Order for the joinder of the paternal grandparents in this cause without the knowledge or consent of the parties.

5. Did the trial court err in denying Father proper notice of Mother's motion to dismiss and other relief, thus effectively denying due process as is guaranteed by the Fourteenth Amendment of the United States Constitution.

6. Did the trial court err on August 1, 2001 in dismissing Father's petition.

7. Did the trial court err in dismissing Father's petition using the "unclean hands doctrine."

8. Did the trial court err in setting no visitation for Father.

9. Did the trial court err in allowing Mother to move out of state with minor child showing no substantial change in circumstances and without having a petition heard to modify the MDA allowing her to move with the minor child.

10. Did the trial court err in allowing an attorney lien to be entered in this cause and with no notice served.

11. Did the trial court err in hearing Mother's petition on November 2, 2001.

12. Did the trial court err in stopping Father's cross-examination of witnesses, regarding contract on marital home and in refusing evidence for the same.

13. Did the trial court err in awarding Mother attorney fees and discretionary costs in the November 2, 2001 order.

14. Did the trial court err in entering the November 2, 2001 order on the same day as hearing nunc pro tunc, affording Father no opportunity to sign said order and to approve as to form and with insufficient notice of such being presented to the court.

15. Did the trial court err in dismissing Father's motion to amend findings and make additional findings and for new trial.

16. Did the trial court err in refusing Father's proof of having paid child support and continued insurance coverage for minor child.

17. Is the either party entitled to attorney fees on appeal.

**Standard of Review**

We review the trial court's conclusions of law "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." Kendrick v. Shoemake, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489, at *6 (Tenn. Nov. 1, 2002) (citing S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001)). With respect to the trial court's findings of fact, our review is *de novo* upon the trial court's record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d).

**Law and Analysis**

We find no merit in Father's first four issues. The record is devoid of any mention or objection by Father as to these issues at any time in the trial court. The first time Father raises any of these issues is in his Motion to Amend Findings and Make Additional Findings and Motion for New Trial, which motion was filed after the trial court dismissed his pending motions. Issues not properly raised in the trial court cannot be raised for the first time on appeal. See Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983). As such, these issues will not be addressed on appeal.

In his next three issues, Father alleges that the trial court erred in dismissing his petitions at the August 1, 2001 hearing. Specifically, Father alleges that the he was denied due process because he was not afforded proper notice of Mother's motion to dismiss. Father also argues that the unclean hands doctrine is inapplicable to cases involving child custody, the trial court erred in failing to set visitation, and the trial court erred in allowing Mother to relocate out of state with the minor child.

On appeal, Father argues that he was not given proper notice of Mother's motion to dismiss. However, Father did not properly raise this at the trial court level. As such, Father cannot now raise this issue on appeal. Father's four above-mentioned petitions were to be heard on August 1, 2001. On the morning of August 1, Mother filed a motion to dismiss, alleging that Father had perpetrated a fraud upon the court. This motion was hand-delivered to Ms. Barbara McCullough, then-counsel for Father. At no time on August 1 did Father object or ask for a continuance. Father had the opportunity to and did cross-examine all Mother's witnesses and Father himself testified. After hearing all the testimony, the trial court granted Mother's motion. The trial court also declined to extend the order of protection. At the conclusion of his remarks from the bench, the trial judge asked the attorneys if there was anything else to be discussed. Mother's attorney responded that the parties

would attempt to work out the remaining issues relating to contempt and the other financial issues. Father's attorney then stated "[t]his was the only thing on the plate. Thank you, Judge."

The first time there is any mention of an objection on the grounds of inadequate notice came in Father's Motion to Amend Findings and Make Additional Findings and Motion for New Trial, which was filed on September 21, 2001. Father's objection should have come at the hearing on August 1, 2001. Issues not properly raised in the trial court cannot be raised for the first time on appeal. See Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983). Thus, we will not address this issue.

Father next argues that the trial court erred in using the doctrine of unclean hands in a child custody dispute. The doctrine of clean hands as applied to a litigant found to have unclean hands has been described as follows:

> The principle is general, and is one of the maxims of the Court, that he who comes into a Court of Equity asking its interposition in his behalf, must come with clean hands; and if it appear from the case made by him, or by his adversary, that he has himself been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

Continental Bankers Life Ins. Co. v. Simmons, 561 S.W.2d 460, 465 (Tenn. Ct. App. 1977) (citing C.F. Simmons Medicine Co. v. Mansfield Drug Co., 23 S.W. 165 (Tenn. 1893)). The doctrine of clean hands is applied for the protection of the court, not the protection of the parties. Inman v. Inman, 1989 WL 122984, at *4 (Tenn. Ct. App. Oct. 18, 1989), *rev'd on other grounds*, 811 S.W.2d 870 (Tenn. 1991) (citing Pappas v. Pappas, 320 A.2d 809, 811 (1973)).

Generally, litigants found to have unclean hands will "be repelled at the threshold of the court." Continental Bankers, 561 S.W.2d at 465 (citations omitted). In proceedings where the welfare of a child is concerned, however, the protection of the child is the focal point. "'[U]nclean hands' does not necessarily repel a petition regarding the welfare of a child which predominates over any offended dignity of the court." Haynes v. Haynes, 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995) (citing Strube v. Strube, 379 S.W.2d 44, 48 (Tenn. Ct. App. 1963)). The best interest of the child is the utmost concern. Johnson v. Johnson, No. M2000-00358-COA-R3-CV, 2001 WL980737, at *7 (Tenn. Ct. App. Aug. 28, 2001). This Court has previously stated:

> that appellant comes into court with unclean hands might in some cases be sufficient justification for denying a hearing to appellant. As was said by Mr. Justice Cook, however, speaking for the Supreme Court in State ex rel. Daugherty v. Rose, 167 Tenn. 489, 71 S.W.(2d) 685, "When such proceedings involve the custody of children, they are not decided according to the strict legal right of the petitioner, but are dependent on the child's welfare."

Strube, 379 S.W.2d at 48. We find the trial court committed no error in dismissing Father's petitions

on the grounds of unclean hands. As previously stated, "'unclean hands' does *not necessarily* repel a petition regarding the welfare of a child." Haynes, 904 S.W.2d at 120 (emphasis added). We find, however, under the facts and circumstances of the present case, that Father's conduct relates directly to the welfare of the child and this egregious behavior precludes an award of custody to him. Thus, we affirm the trial court's actions with respect to custody of the child.

In his eighth issue, Father argues that the trial court erred in failing to set visitation. Specifically, Father alleges that "the trial court and Mother continue to deny him visitation with his son, using the alleged order on Supervised Visitation . . . as the basis to threaten him with arrest when he tries to see his son." This Court is unable to find any evidence in the record that supports Father's argument that he was denied visitation. Thus, it is not necessary for this court to address this issue as Father is free to file a petition in the trial court regarding visitation under its continuing jurisdiction.

Father next argues that the trial court erred in allowing Mother to relocate with the minor child. Specifically, Father argues that the parties spent substantially equal intervals of time with the child and that the trial court failed to make a best interest determination in accordance with Tennessee Code Annotated section 36-6-108(c). We disagree.

We find that in granting Mother's motion to dismiss and allowing her to move, the trial court made an implicit best interest analysis. The trial court found Father's conduct in perpetrating a fraud on the court to be so egregious that there was no set of circumstances under which Father would prevail. Father's abhorrent conduct directly affects the welfare of the child, which is the paramount concern. Thus, we find no error in the trial court's actions and we affirm.

In his tenth issue, Father argues that the trial court erred in allowing an attorney's lien to be entered. Specifically, Father asserts that he did not receive proper notice and that the lien was in violation of the parties' MDA. We find no merit in Father's argument that he did not receive proper notice as notice was mailed to his last known address. See TENN. R. CIV. P. 5.02. Father argues that Mother sent the notice to an address that he has never lived. Father, however, has not substantiated this bare allegation.

Additionally, Father argues that the lien was in violation of the parties' MDA, which provided as follows:

> It is further agreed that neither party will at any time hereafter contract any debts, charges or liabilities whatsoever for which the other party or their property or their estate shall or may become liable or answerable, and the parties hereby covenant and agree that they will at all times hereafter keep the other party free and harmless from any and all debts or liabilities which may hereafter be incurred by them.

We find no merit in Father's argument. According to section four (4) of the MDA, the parties had approximately $90,000 in equity in the marital residence. The MDA also provides that upon the sale

of the residence, Father was to receive one-half of the proceeds from the sale less $5,000 and Mother was to receive one-half plus $5,000. The amount of the attorney's lien was $17,921.82 plus fees and expenses incurred to collect that amount. The amount of the lien filed by Mother's attorney was such that it would not encroach upon Father's portion of the equity in the marital residence.

Father also argues that the attorney's lien, pursuant to Tennessee Code Annotated sections 25-5-105 and 25-5-106, should have prevented the sale of the marital residence. We likewise find no merit in Father's argument. Sections 25-5-105 and 25-5-106 both concern liens of judgment. The lien involved in the present case is an attorney's lien, granted by Tennessee Code Annotated section 23-2-103.

Father argues in his eleventh issue that the trial court erred in hearing Mother's petition on November 2, 2001. Specifically, Father asserts that the trial court erred in divesting him of all rights and title to the marital residence. Father asserts that the court erred in considering the "prejudiced testimony" of Mother and Mr. Whitlock. Father also cites Walton v. Seawood, 1986 Tenn. App. LEXIS 3458 (Tenn. Ct. App. Dec. 11, 1986), for the proposition that the court lacked the authority to divest title from Father and vest title in Mother.

Walton, a case involving a suit for partition, is clearly distinguishable from the case *sub judice*. In Walton, the plaintiff, a co-tenant, filed a complaint for partition by sale. Id. at *1. Following a motion for summary judgment, the trial court ordered that "all right, title, and interest" in the real property be divested out of all other co-tenants and vested in one co-tenant. Id. The issue on appeal was whether the trial court erred in divesting title out of all co-tenants and vesting it in one co-tenant in fee rather than ordering a sale. Id. This Court reversed the trial court, holding that the plaintiff was entitled to a partition. Id. at *5. In reaching this conclusion, we noted that a tenant in common is generally entitled to a partition or a sale for partition. Id. at *4. We also noted that courts generally have discretion as to the "manner of partition but none as to the fact." Id. at *5.

The case at bar arises from a divorce proceeding, not a suit for partition as in Walton. While the trial court does not have the authority to divest title out of one co-tenant and vest it in another in a suit for partition, see id. at *5 (citations omitted), courts are permitted to divest title from one spouse and vest title in the other spouse in divorce proceedings. See TENN. CODE ANN. § 36-4-121(3); see also Thompson v. Thompson, 1988 Tenn. App. LEXIS 385, at *11 (Tenn. Ct. App. June 20, 1988). Thus, we find no merit in Husband's argument.

Mother argues that the parties were under a court order, pursuant to the terms of the MDA and the final divorce decree, to sell the property. Mother maintains that the trial court's order which divested Father of his interest in the marital home had the same effect as if the trial court had compelled Father to sign the contract for sale to effectuate the sale of the home. We agree.

Mother is correct that the parties were required, pursuant to the MDA, to sell the property. The MDA provided that the parties agreed "that said real property shall be placed on the market to be sold within five (5) years on the date of the entry of the Final Decree of Divorce in this cause."

Mother filed her petition to compel Father to sign the real estate contract and for sale of property on October 12, 2001. The trial court's order divesting title from the Father had the same effect as if the trial court had compelled Father's signature.

Father also argues that the trial court's action modified the divorce decree's division of marital property. We find no merit in Father's argument. The MDA provided that "[w]hen the property is sold, Husband will receive one-half (½) from the proceeds of said sale, less Five Thousand dollars ($5,000.00). Wife will receive one-half from the proceeds of said sale, plus Five Thousand Dollars ($5,000.00)." The trial court's action in divesting title out of Father for the purpose of proceeding with the sale of the marital residence did not affect the above distribution.

In his twelfth issue, Father asserts that the trial court erred in stopping his cross-examination of witnesses regarding the contract on the marital home. We disagree. Father was allowed to question witnesses, including the real estate agent, Tommy Whitlock. At the conclusion of the cross-examination, Father stated "Your Honor, I'm through." Thus, we find no merit in Father's argument.

In his thirteenth issue, Father argues that the trial court erred in awarding Mother her attorney fees and discretionary costs on November 2, 2001. Specifically, Father alleges that the fees and costs are excessive, he was given no reasonable opportunity to oppose the request for attorney fees, and that Mother's request for discretionary costs was not timely.

Contrary to Father's assertion that he was not given an opportunity to oppose the request for attorney fees, Father had ample opportunity to do so. At no time did Father question Mother regarding the fees in his cross-examination of her, nor did Father call Mother's attorney. Father submitted no affidavits or other proof in opposition to Mother's request, nor did Father ask for a continuance to do so. At the conclusion of the hearing, the trial court asked Mr. Dulin if he had any proof or wanted to speak about the issues of attorney fees or discretionary costs. Mr. Dulin's only response was that he expected proof from Mother because he did not consider the affidavits submitted by Mother sufficient. Because Mr. Dulin had the opportunity to question the reasonableness of Mother's attorney fees and chose not to, we will not now entertain his arguments regarding the excessiveness of the fees.

Father also argues that pursuant to Rule 54.04(2) of the Tennessee Rules of Civil Procedure, Mother was required to file and serve her motion for discretionary costs within thirty (30) days after entry of judgment. Father argues that Mother did not timely file her motion for discretionary costs because she filed said motion on October 12, 2001, which was beyond thirty (30) days from the entry of judgment, filed August 24, 2001.

Mother argues that her motion to assess costs was timely because it was filed within thirty days after Father filed a motion for new trial. We agree. In Ashford v. Benjamin, No. 02A01-9311-CV-00243, 1994 Tenn. App. LEXIS 706, at *2 (Tenn. Ct. App. Dec. 6, 1994), the judgment was entered on June 4, 1993. Also on June 4, 1993, the appellees filed a motion for new trial. Id. This motion was denied by order entered on July 7, 1993. Id. Thereafter, on August 6, 1993, one of the

appellants filed a motion to assess discretionary costs. Id. On appeal, the appellee argued that the appellant's motion was not timely as it was filed beyond thirty (30) days from June 4, 1993, the entry of judgment. Id. at *3. This Court held that because the appellant's motion for costs was filed within thirty (30) days after July 7, the entry date of the order denying appellee's motion for new trial, it was timely pursuant to Rule 54.04(2). Id. at *4-5. Thus, in accordance with our decision in Ashford, we find Mother's motion was timely filed.

This Court has previously held that "attorney fees are only awarded if provided for by contract, statute, or a recognized ground of equity." Austin Powder Co. v. Thompson, No. 03A01-9607-CV-00229, 1996 Tenn. App. LEXIS 805, at *5 (Tenn. Ct. App. Dec. 16, 1996) (citing State v. Thomas, 585 S.W.2d 606 (Tenn. 1979)). As Mother points out in her brief, a trial court is authorized to award attorney fees pursuant to Tennessee Code Annotated section 36-5-103(c), which provides in pertinent part as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

TENN. CODE ANN. § 36-5-103(c). Since we have upheld the issues regarding custody of the child, we also uphold the award of attorney fees.

Mother also asserts that she is entitled, pursuant to the parties' MDA, to the attorney fees she incurred in filing the petition to compel Father's signature on the sale contract to effectuate the sale of the marital residence. Mother argues that she was forced to file this petition due to Father's repeated refusal to comply with the terms of the MDA. Paragraph sixteen (16) of the parties' MDA provides as follows: "Enforcement. In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, if the party prevail, he or she shall also be entitled to a judgment for reasonable expenses, including attorney fees, incurred in prosecuting the action." In accordance with the MDA, Mother is entitled to the attorney fees she incurred in enforcing the MDA in relation to the property issues. Thus, we affirm the trial court's award of attorney fees that were granted based on the enforcement provision in the MDA.

In his next issue, Father argues that the trial court erred in entering the order from November 2, 2001 nunc pro tunc, affording him no opportunity to sign the order and to approve it as to form. Specifically, Father argues that this order was not entered in compliance with Rule 58 and as such is void. We disagree. Father cites the case of Yearout v. Trusty, 684 S.W.2d 612 (Tenn. 1984), in support of his argument. The holding of that case, however, was changed by the 1993 amendment to Rule 58. See TENN. R. CIV. P. 58, advisory commission comments. Pursuant to Rule 58(2) of the

Tennessee Rules of Civil Procedure,

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
> . . .
> (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel.

TENN. R. CIV. P. 58. The purpose of Rule 58 is to "insure that a party is aware of the existence of a final, appealable judgment in a lawsuit in which he is involved." Masters ex rel. Masters v. Rishton, 863 S.W.2d 702, 705 (Tenn. Ct. App. 1992). The order at issue was signed by the trial judge and Mother's counsel on November 5, 2001 with a certificate of service stating that a copy was mailed to Father. Thus, we find that Father received sufficient notice that a final, appealable judgment had been entered in the cause.

In his fifteenth issue, Father asserts that the trial court erred in dismissing his motion to amend findings and make additional findings and for a new trial. Father alleges that the trial court summarily dismissed his motions without providing him the opportunity to state his cause and present evidence. Father also notes that the trial court did not provide any reasons for the dismissal.

Rule 52.02 provides in pertinent part: "[u]pon motion of a party made not later than 30 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." TENN. R. CIV. P. 52.02. The decision of whether to grant a motion for additional findings made pursuant to Rule 52.02 is within the sound discretion of the trial court. Long Equipment Co., Inc. v. Keeton, 736 S.W.2d 611, 614 (Tenn. Ct. App. 1987). The language of the rule itself provides that the trial court *may* make additional findings. Id.; see also TENN. R. CIV. P. 52.02. From the record before us, we cannot say that the trial court abused its discretion in refusing to grant Father's motion for additional findings. See id.

Motions for new trial are likewise reviewed under the abuse of discretion standard. Russom v. McClore, No. W1999-02215-COA-R3-CV, 2000 Tenn. App. LEXIS 314, *6 (Tenn. Ct. App. May 10, 2000) (citations omitted). Under this standard, Father must show that the trial court abused its discretion in refusing to grant his motion for new trial. See id. After a thorough review of the record, we find that the trial court did not abuse its discretion with respect to any of Father's contentions. Father also alleges that the trial court erred in not providing a reason behind its decision to deny his motion. We find no merit in this assertion. It has been held that the trial court's discretion is such that it is not required to give a reason for its ruling. Mize v. Skeen, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971).

In his sixteenth issue, Father asserts that the trial court erred in refusing to allow Father to present proof of having paid child support and insurance coverage for minor child. Mother argues that the trial court reserved the issues relating to her contempt petition, so the trial court did not need to hear proof on these issues. We agree. The court decided to "reserve the petition for contempt" because Father had not demonstrated his ability to really protect and represent himself. We find no

error in the trial court's actions.

Both parties have requested that this Court order the respective opposing party to pay the other's attorney fees incurred for this appeal. Our supreme court has defined the factors that should be applied when considering a request for attorney fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. See Folk v. Folk, 357 S.W.2d 828, 829 (Tenn. 1962). We find it equitable to decline to award either party the attorney fees incurred for this appeal.

As a final matter, Father argues that it has come his attention that the final divorce decree entered in 1998 was void for reasons relating to service. We find no merit in Father's argument.

**Conclusion**

Accordingly, we affirm. Costs on appeal taxed to the Appellant, Michael Jay Dulin, and his surety, for which execution may issues if necessary.

_____
ALAN E. HIGHERS, JUDGE