Robert C. MOORHEAD and wife, Elizabeth A. Moorhead, Appellants,

v.

J. C. PENNEY COMPANY, INC., Appellee.

Supreme Court of Tennessee.

Sept. 19, 1977.

William D. Vines, III, Butler, Vines, Babb & Threadgill, Knoxville, for appellants.

Dalton L. Townsend, Hodges, Doughty & Carson, Knoxville, for appellee.

## OPINION

BROCK, Justice.

This is an action to recover compensatory and punitive damages for the alleged infliction of "severe emotional distress, exasperation, physical irritability and nervousness, headaches, anger and frustration" upon the plaintiffs by a course of conduct on the part of the defendant and its agents which plaintiffs characterize as "outrageous." The trial court dismissed the complaint, holding that it failed to state a cause of action upon which relief may be granted. Plaintiffs appealed.

### I

Plaintiffs allege that they maintained a charge account with the defendant, J. C. Penney Company, and that they returned a purchased item of merchandise to the defendant's store in the West Town Shopping Mall in Knoxville with the agreement of defendant's employees there that plaintiffs would be given a credit for the returned merchandise in the sum of $16.78. Due to a mistake in the defendant's billing and accounting procedures, the plaintiffs' next monthly statement indicated a charge, rather than a credit, in the amount of $16.78. Plaintiffs promptly called this mistake to the attention of defendant's employees in Knoxville who assured them that the error would be corrected forthwith. The complaint describes the events which occurred thereafter as follows:[1]

"III. Plaintiffs repeatedly called the local office of the J. C. Penney Company and it was always explained that the mistake would be corrected but the threatening letters not only continued to come from the J. C. Penney Company but service charges were added to the mistaken charge so that the bill increased in amount. Further

---

1. We note that no objection was made to the form of the complaint despite its obvious prolixity. Averments in pleadings should be "simple, concise and direct." Rule 8, Tennessee Rules of Civil Procedure.

plaintiffs began to receive correspondence requesting payment on almost a daily basis.

"IV. As a result of the urging of the local office of the J. C. Penney Company, it was finally attempted by the J. C. Penney Company to correct the erroneous charge but instead of correcting same and wiping the slate clean, through another grossly negligent error, the charge was actually doubled so that after all finance and service charges were added it was suddenly claimed that plaintiffs owed $38.12 to the J. C. Penney Company and once again plaintiffs began to receive threatening letters from the J. C. Penney Company asking for payment of the due and total balance.

\*  \*  \*  \*  \*  \*

"VI. In March, 1974, plaintiffs began to receive notices from the Knoxville Collection Agency which had been referred the matter (sic) by the J. C. Penney Company and following this many letters of a threatening nature came from the collection agency all at the instance of the J. C. Penney Company.

"VII. Plaintiffs went in person to the J. C. Penney Company and sat down with the manager of the store after having made copies of all the documents they received and the store manager for the West Town J. C. Penney Company local store admitted that the J. C. Penney Company had made a mistake and wrote a long correspondence to the Atlanta office beginning with the words 'We goofed.' Shortly thereafter plaintiffs received a notification which appeared to be in the nature of a lawsuit which indicated 'final notice before suit.'

"VIII. Finally in July, 1974, a letter was forwarded by the J. C. Penney Company to the Knoxville Credit Bureau indicating that in fact J. C. Penney Company had reported an error and thereupon clients (sic) received information indicating a new account had been opened for them but were shocked to find that when the new account was opened they were again charged with the erroneous purchases and once again clients (sic) began to receive threatening letters and notices with finance charges added each month indicating such information as 'our collection department now has your account!' Plaintiffs have received a notice as recently as December, 1974, and it appears that the notices will continue to be sent. Plaintiffs have now received some 42 threatening letters and bills from the J. C. Penney Company all as a result of their gross neglect and error in spite of repeated requests of plaintiffs to correct the error including long distance phone calls to the Atlanta office and many calls to the local office of the J. C. Penney Company.

"IX. Plaintiff, Robert C. Moorhead, is an accountant with the Tennessee Valley Authority and his wife, Elizabeth Moorhead, is a schoolteacher. Neither plaintiff has ever been a party to a lawsuit previously, both enjoy an excellent reputation with regard to payment of bills and both have done all within their power to try to be reasonable in straightening out this matter with the J. C. Penney Company. It is averred that this incident has caused them considerable emotional distress and has resulted in some monetary loss to them including charges for phone calls, charges for copies of documents requested by the J. C. Penney Company, car expense for two trips to the West Town J. C. Penney Company, and the necessity to miss work and use vacation time in order to try to get the matter straightened out and the incurrence of mailing expense. The home life for plaintiffs has been considerably disrupted and their integrity questioned by defendant through its gross neglect. In fact as late as October, 1974, in a phone conversation with the Atlanta office of the J. C. Penney Company, said company through its agent indicated that the logical explanation for this matter was the possibility that the plaintiffs had given a 'bad check' to the J. C. Penney Company.

\*  \*  \*  \*  \*  \*

"XI. It is further averred that defendant's conduct in failing to correct its obviously erroneous records for its own financial benefit has been intentional and so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and same is regarded as atro-

cious and utterly intolerable in a civilized community. Plaintiffs rely upon the theory of outrageous conduct.

\* \* \* \* \* \*

"XIV. Plaintiffs aver the actions of defendant, through its agents, has been willful, wanton, gross and intentional and that said acts have been ratified by defendant.

\* \* \* \* \* \*

"XVI. It is further averred that in October, 1974, defendant, through its agents, called Mrs. Elizabeth Moorhead, the wife of Robert Moorhead, and falsely and maliciously indicated that Mr. Moorhead did not pay his bills, had long been in delinquent with regard to its accounts and had not heeded reasonable requests of the defendant and the conversation tendered (sic) to degrade and injury (sic) Mr. Moorhead's situation insofar as his financial reputation was concerned. In the same conversation it was demanded that the defendant be in immediate contact with Mr. Moorhead and it was explained that the only way to reach Mr. Moorhead since he was away on business was to call Mr. Moorhead's employer, explain the circumstances and ask for an emergency contact. Defendant, through its agent, demanded and requested that this be done and it is averred that both publications amount to a slander both to Mrs. Moorhead and to the employer of plaintiff, Robert Moorhead. A document was forwarded to plaintiffs indicating that the defendant would call at plaintiffs place of business unless defendant was contacted by plaintiffs.

"XVII. It is averred that the repeated correspondence and verbal communication from defendant to plaintiff contained thinly veiled threats, indicated that plaintiff would be listed 'as delinquent with your local credit bureau,' that 'immediate court action' would be taken against plaintiff for the 'principal, interest, court costs and attorneys fees' and that 'your credit privileges have been terminated.' Plaintiffs aver these threats as well as threats that plaintiff did not pay his bills on time and was the type of person who might write a bad check were calculated to (sic) by defendant

and did cause severe emotional distress, exasperation, physical irritability, and nervousness, headaches, anger, and frustrations. It is averred that a good credit reputation is an important asset in today's society and that plaintiff's job as an accountant require that he have a good credit reputation. Defendants knew and it is averred to be the fact that a mere inference of the matters being published and communicated and threatened by defendant would severely restrict plaintiff in job opportunities, in advancement opportunities, and in the ability to enjoy life in the community in which he lived. It is further averred that Mrs. Elizabeth Moorhead, being a schoolteacher, feared and justifiably feared that the mere communication of this possible bad debt would affect her ability to obtain employment. Consequently she begged her husband to pay the bill even though same was not owed and when he stood on right and principle, considerable friction and argument resulting, causing great family discord, threats regarding their marital status, and caused both parties to be greatly upset, emotionally distressed, and physically nervous and not well.

"XVIII. Plaintiffs further aver that the threats and calls to them continued for more than one year and continued long after defendant's agents had admitted that the mistake was made and after defendant had been advised fully concerning the facts of how and why the mistake was made. It is averred that the reason the harassment and threats continued from the Collection Department of the defendant is that defendant has adopted a procedure to maximize its profits whereby its Collection Department is wholly unresponsive to communication of individuals and wholly unresponsive to communication from other departments within itself. This procedure and method was calculated to result in maximum collection effort using the threat of job security and credit reputation which this defendant knew was valuable to these plaintiffs. It is averred that this method of collection is calculated to cause collection of accounts not legitimately owed by the abili-

ty to apply credit pressure from a large wealthy corporation when the defendant knew or should have known that an individual would be severely damaged even though subsequently his or her name might be cleared."

■ We hold that the foregoing allegations state a cause of action for intentional or reckless infliction of severe emotional distress by means of extreme and outrageous conduct. *Medlin v. Allied Investment Company*, 217 Tenn. 469, 398 S.W.2d 270 (1966); *Johnson v. Woman's Hospital*, Tenn.Ct.App., 527 S.W.2d 133 (1975); *First National Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381 (1969); *George v. Jordan Marsh Company*, 268 N.E.2d 915, 46 A.L.R.3d 762 (Mass.1971); *Herman Saks & Sons v. Ivey*, 26 Ala.App. 240, 157 So. 265 (1934); *Bowden v. Spiegel, Inc.*, 96 Cal. App.2d 793, 216 P.2d 571 (1950); *Barnett v. Collection Service Company*, 214 Iowa 1303, 242 N.W. 25 (1932); *La Salle Extension University v. Fogarty*, 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491 (1934); *Kirby v. Jules Chain Stores Corp.*, 210 N.C. 808, 188 S.E. 625 (1936); *Clark v. Associated Retail Credit Men*, 70 App.D.C. 183, 105 F.2d 62 (1939); *Duty v. General Finance Company*, 154 Tex. 16, 273 S.W.2d 64 (Tex.1954); *Christensen v. Swedish Hospital*, 59 Wash.2d 45, 368 P.2d 897 (1962); Restatement of Torts, 2d, § 46, Comment (e); 38 Am.Jur.2d 57, Fright, Shocks, etc., § 44— Methods Used in Collection of Debts.

In *Medlin, supra*, this Court discussed at length the state of the law with respect to the tort which has become known as "outrageous conduct." Although the Court concluded that the plaintiff's allegations were not sufficient to state a cause of action, the tort was recognized as a part of the law of this state, at least as it was delineated in Restatement of Torts, 2d, § 46. The gist of the Court's holding in *Medlin* was:

".  .  . [W]e find [that] the two factors which must concur in order to outweigh the policy against allowing an action for the infliction of mental disturbance [are]:

(a) The conduct complained of must have been outrageous, not tolerated in civilized society, and

(b) as a result of the outrageous conduct, there must be serious mental injury."

■ In our view, a jury could reasonably conclude that the conduct of the defendant, considered as a whole, was extreme, outrageous and intolerable in present day society; and, that the mental and emotional injuries alleged by the plaintiffs to have resulted from defendant's conduct are serious. In reaching this conclusion we consider certain aspects of the defendant's conduct, as alleged, to be especially significant. First, is the fact that defendant's threatening letters, telephone calls, etc., continued long after defendant had acknowledged that its accounts were in error and that plaintiffs owed it nothing. The fact, if it be a fact, that the personnel of the defendant's collection department did not possess the knowledge, which admittedly was possessed by those in another of its departments, that the alleged debtor did not in fact owe defendant anything is no matter of defense; such knowledge of the one department is imputed to the corporate entity, the principal, and its liability must be determined accordingly. Next, we regard as significant (1) the long duration of defendant's course of conduct which is alleged by the plaintiffs to be "for more than one year" and (2) the volume of the threatening letters and bills, alleged to be "some 42" in number. Finally, we regard as significant the threats to deliberately injure the plaintiffs' credit reputation and jeopardize their job security.

■ Our conclusion is supported by decisions in other jurisdictions dealing with like conduct. Throughout the development of this tort, certain tactics employed by creditors in attempts to collect alleged debts have been held to be actionable. See *Barnett v. Collection Service Company, supra; La Salle Extension University v. Fogarty, supra; First National Bank of Jacksonville v. Bragdon, supra; George v. Jordan Marsh Company, supra*; and other cases cited *supra*. A fair statement of the holdings of such cases is as follows:

"The general rule is that a creditor has a right to urge payment of a just debt, and to threaten to resort to proper legal procedure to enforce the obligation. Hence, the creditor is not liable for a mental or emotional disturbance, or for a bodily injury or illness, as a result of his mere attempt, by reasonable means, to collect. "On the other hand, the view generally taken is that improper methods used to collect a debt may be the basis for the maintenance of an action for a mental or emotional disturbance produced thereby, or for a bodily injury or illness resulting from such mental or emotional disturbance, especially where the circumstances attending the effort to collect the claim are such as to invoke the general rule that one who wilfully or intentionally causes great emotional distress, without justification, is liable for such injuries. The latter rule has been applied where the creditor wilfully and intentionally sought to produce the mental or emotional disturbance in the debtor for the purpose of forcing the latter to pay the debt, by sending coarse and vindictive letters, or by threatening to appeal to the debtor's employer. In such cases, the question whether or not the plaintiff justly owed and should pay the debt has been regarded as immaterial. The same result has been reached as to a threat to sue where the creditor knew that the claim could not legally be collected." 38 Am. Jur.2d 57, 58.

If liability is imposed upon a creditor for "purposely worrying [his debtor] sick" in an effort to collect a debt, *Clark v. Associated Retail Credit Men, supra;* a fortiori, one should be liable who by means of extreme and outrageous collection tactics willfully or recklessly inflicts mental and emotional injury, humiliation and shock upon another not actually his debtor. *Herman Saks & Sons v. Ivey, supra; Bowden v. Spiegel, Inc., supra.*

■ The standards here applicable, i. e., "extreme and outrageous" and "not tolerated in civilized society," are, like "negligence" and other variable standards which are based upon the common sense of the community, primarily for application by the jury.

## II

■ Finally, that punitive damages may, in the discretion of the trier of facts, be awarded in cases of recovery for outrageous conduct is already settled in this state. *Johnson v. Woman's Hospital, supra.*

The judgment of the trial court is reversed and the cause remanded for further proceedings. Costs of this appeal are taxed against appellee.

COOPER, C. J., and FONES, HENRY, and HARBISON, JJ., concur.