Gwendlyn Daphane LAWRENCE, A Minor, and Mario Edward Lawrence, A Minor, both by next friend and Mother, M. Annette Powell and M. Annette Powell, Individually, Plaintiffs-Appellants,

v.

J.L. STANFORD and Ashland Terrace Animal Hospital, PC, Defendants-Appellees,

and

William Leech, Attorney General, Intervenor.

Supreme Court of Tennessee, at Knoxville.

Aug. 15, 1983.

James C. Lee, Fred Hanzelik, Chattanooga, for plaintiffs-appellants.

L. Hale Hamilton, Mark A. Ramsey, Chattanooga, for defendants-appellees.

Frank J. Scanlon, Asst. Atty. Gen., Nashville, for intervenor.

## OPINION

BROCK, Justice.

The plaintiffs, Annette Powell, and her two minor children, Mario Edward Lawrence and Gwendlyn Daphane Lawrence, brought this action against the defendants, J.L. Stanford, a veterinarian, and Ashland Terrace Animal Hospital, PC, for damages and other relief. The plaintiffs allege that the defendants willfully inflicted emotional injuries upon the plaintiffs by their outrageous and extreme conduct in threatening that they "would do away with" the plaintiffs' little dog as the doctor saw fit unless the plaintiffs paid "in cash and in full" charges made by the defendants for treating the dog for injuries suffered when struck by an automobile, although the plaintiffs had made known to the defendants that they were unable to pay the complete bill in full at the time demand was made and had sought an agreement from the defendants to allow payment over a period of time which request was denied. It was alleged in the complaint that the defendants threatened to "do away with the dog" unless the bill was paid in full by Friday, January 11, 1980. Being unable to raise the money sufficient to pay the bill by the deadline thus set, plaintiffs brought this action on January 11, 1980, to enjoin the defendants from disposing of the dog and asking for damages for the "outrageous conduct" of the defendants.

The defendants answered, admitting that the plaintiffs were told that they could not have possession of their dog until the defendants' bill was paid in full and in cash but denied stating that Dr. Stanford would "do away with the dog as he sees fit." The defendants further allege that on February 5, 1980, after the initial restraining order against them had been dissolved, the defendants proceeded to dispose of the dog pursuant to the provisions of T.C.A., § 63–1234,[1] by notifying plaintiffs that unless the bill was paid within 10 days the dog would be turned over to the humane society for disposal. The defendants filed a counter-complaint against the plaintiffs in which they sought a judgment for $155.00 representing the charges made by the clinic and veterinarian.

1. T.C.A., § 63–1234, has been re-codified as T.C.A., § 63–12–134. See appendix for wording of the statute.

The defendants then filed motions for summary judgment seeking (1) dismissal of the complaint against them and (2) seeking a judgment in their favor on their counterclaim. These motions for summary judgment were based upon the pleadings in the case and upon an affidavit made by Dr. Stanford. The plaintiffs resisted the motions for summary judgment, relying upon the pleadings and the affidavit of the plaintiff, Annette Powell. The trial court granted both summary judgment motions in favor of the defendants and the plaintiffs appealed to the Court of Appeals.

Two points should be noted at this point: (1) the defendants did not give the plaintiffs notice of defendants' intention to invoke the provisions of T.C.A., § 63–1234, until January 15, 1980, which was *after* plaintiffs' suit was filed on January 11, 1980, (2) plaintiffs did not challenge the constitutionality of T.C.A., § 63–1234, at any point in the proceedings in the trial court.

### II

The Court of Appeals affirmed the summary judgment in favor of the defendant dismissing the plaintiffs' complaint for outrageous conduct, but reversed the summary judgment in favor of the defendants granting a judgment against the plaintiffs on the countercomplaint, since it concluded that a disputed issue respecting a material fact existed respecting the amount of damages owed to the defendants by the plaintiff.

The plaintiffs in their brief in the Court of Appeals challenged the constitutionality of T.C.A., § 63–1234, on grounds that it denied the plaintiffs' due process of the law, despite the fact that plaintiffs had not made such a challenge in the trial court. The Attorney General was notified of this challenge and he became a party to the appeal but chose to rely upon the brief of the defendants rather than file one of his own.

The Court of Appeals held that T.C.A., § 63–1234, deprived the plaintiffs of substantive due process of law in violation of the Fourteenth Amendment "in that the statute permits forfeiture by the veterinarian to a third party (humane society or dog pound) without giving credit to the owner for the value of the animal if it is less than the bill, or becoming liable to account to the owner if it is more."

Nevertheless, the court held that the defendants had "substantially complied" with the invalid statute in disposing of the plaintiffs' dog and, therefore, that defendants' actions in this regard could not be considered to be "outrageous conduct." Thus, the summary judgment in favor of the defendants on the original complaint was affirmed.

We express no opinion respecting the constitutional validity or invalidity of T.C.A., § 63–1234, and we hold that the Court of Appeals erred in considering that issue. It was error for that court to adjudicate the constitutional issue because that question had not been raised at any point in the proceedings in the trial court.

It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion. *City of Elizabethton v. Carter County,* 204 Tenn. 452, 321 S.W.2d 822 (1958); *Veach v. State,* Tenn., 491 S.W.2d 81 (1973); *Harrison v. Schrader,* Tenn., 569 S.W.2d 822 (1978); *Dorrier v. Dark,* Tenn., 537 S.W.2d 888, rehearing 540 S.W.2d 658 (1976). Rule 36A TRAP. Since the constitutional validity of T.C.A., § 63–1234, was not raised in the trial court no opportunity was afforded for the introduction of evidence which might be material and pertinent in considering the validity of the statute. Accordingly, we reverse the action of the Court of Appeals in holding that this statute is unconstitutional. We

are not, however, holding that the statute is free of constitutional defect; we merely hold that no adjudication of that issue should have been made by the Court of Appeals upon this record.

■ We further hold that the Court of Appeals erred in affirming the action of the trial court in sustaining the defendants' motion for summary judgment and in dismissing the plaintiffs' complaint. The gist of the plaintiffs' cause of action is that the defendant veterinarian, through his agents and servants, threatened to "do away with the dog as the doctor sees fit" unless the plaintiffs paid the charges made by the veterinarian and his clinic in full and in cash by January 11, 1980, and that this threat was made willfully and with the intention that it inflict such mental and emotional injury upon the plaintiffs as would induce them to somehow raise the money necessary to pay the bill.

Plaintiffs allege that such conduct is outrageous and extreme and is not tolerable in a civilized society. We agree.

We quote from plaintiffs' complaint as follows:

"VII

"That on Thursday, January 10, 1980, plaintiff received several calls from defendants' agent and employee, again threatening plaintiff to pay or defendants would 'do away with the dog.'

"VIII

"That plaintiffs would aver and show that they own the dog and are entitled to immediate possession of their dog and that defendants' holding of the dog, refusing to return, and threats to do away with said dog are outrageous and so extreme in degree as to go beyond all bounds of decency and are atrocious and utterly intolerable in a civilized society.

"IX

"That as a result of defendants' outrageous conduct plaintiffs, and each of

them, have suffered severe emotional distress. The minor plaintiffs, in particular, have shown severe distress and spent their Christmas holidays extremely upset, having numerous bouts of crying and obvious distress."

These allegations are supported in the record by the affidavit of Annette Powell, one of the plaintiffs and the mother of the two minor plaintiffs. On the other hand, the defendants deny that the threat to "do away with the dog" was made. Thus, a genuine issue as to a material fact was presented, rendering it error for the court to grant summary judgment under Rule 56.03, T.R.C.P. As we said in *Moorhead v. J.C. Penney Co., Inc.*, Tenn., 555 S.W.2d 713 (1977):

> "The standards here applicable, i.e., 'extreme and outrageous' and 'not tolerated in civilized society,' are, like 'negligence' and other variable standards which are based upon the common sense of the community, primarily for application by the jury." 555 S.W.2d at 718.

■ We disagree with the conclusion of the Court of Appeals that the defendants acted in "substantial compliance" with T.C.A., § 63–1234, and thus that their conduct of which the plaintiffs complain was justified and could not be considered to be "outrageous conduct." The statute can afford no shelter to the defendants in this particular case because the threats to do away with the animal, if they were made, are not authorized by the statute. Moreover, the notice required by the statute, T.C.A., § 63–1234, was not given by the defendants to the plaintiff until January 15, 1980, after this suit was filed. It was the conduct of the defendants prior to that date which plaintiffs assert as the basis for their action.

In our view, a jury could reasonably conclude that such conduct of the defendant was extreme, outrageous and intolerable in present day society and that the mental and emotional injuries alleged by the plaintiffs to have resulted from the defendants' con-

duct are serious. *Moorhead v. J.C. Penney Co., Inc., supra; Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270 (1966); *Johnson v. Woman's Hospital,* Tenn., App., 527 S.W.2d 133 (1975); 38 Am.Jur.2d 57, 58 *Fright, Shock, Etc.* (1968) and cases there cited.

The judgment of the Court of Appeals affirming the action of the trial court in granting the defendants' motion for summary judgment dismissing the plaintiffs' complaint is reversed and this cause is remanded to the trial court for trial on the merits. Costs are taxed against the defendants-appellees.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.

## APPENDIX

"63–12–134. *Abandonment of animals.*—(a) The term abandonment as used in this chapter shall mean to forsake entirely, or to neglect, or to refuse to provide for, or to perform the legal or contractual obligation for care and support of an animal by its owner or his agent, and such abandonment shall constitute a relinquishment of all rights and claims of the owner to such animal after notice is given as hereinafter provided.

"(b) Any animal placed in the custody of a licensed veterinarian for treatment, boarding or other care, shall be considered to be abandoned by its owner or its agent following ten (10) days' written notice by registered mail being given by the licensed veterinarian to the owner or his agent at the last known address of such owner or agent, and the failure of the owner or the agent to fulfill his contractual obligation within the above mentioned ten (10) days with the licensed veterinarian, and after such abandonment, may be turned over by the licensed veterinarian to the custody of the nearest humane society or dog pound in the area for disposal as the custodian of such humane society or dog pound may deem proper. Nothing contained herein shall be construed as relieving the owner of such animal or his agent from any liability which the owner or his agent may have incurred as a result of the furnishing of such treatment, boarding, or other care by the licensed veterinarian for the entire period the animal has been in the custody of said licensed veterinarian.

"(c) The giving of notice as provided herein to the owner, or the agent of the owner, of such animal by the licensed veterinarian as provided in subsection (b) shall relieve the veterinarian and any custodian, to whom such animal may be given, of any further liability for the care or treatment of said animal. The veterinarian or custodian of a humane society or dog pound shall not be liable for disposal of said animal. Such procedure by the veterinarian shall not constitute grounds for disciplinary proceedings under this chapter."