**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0574n.06

**No. 08-5791**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 18, 2009**
LEONARD GREEN, Clerk

DONALD H. MACDERMID, Individually )
and as Administrator of the Estate of Nina )
Kay MacDermid, )
      Plaintiff-Appellant, )
       )
       )  ON APPEAL FROM THE
v. )  UNITED STATES DISTRICT
       )  COURT FOR THE MIDDLE DISTRICT OF
DISCOVER FINANCIAL SERVICES, )  TENNESSEE
d/b/a Discover Charge Card, )
      Defendant-Appellee. )

BEFORE:    KEITH, COLE, and WHITE, Circuit Judges.

**KEITH, Circuit Judge**. In this diversity action, Plaintiff-Appellant Donald H. MacDermid, on behalf of the Estate of Nina Kay MacDermid, his late wife, challenges on appeal the district court's denial of his Motion to Alter or Amend an order granting summary judgment in favor of Defendant-Appellee Discover Financial Services. Plaintiff specifically argues that a material question of fact exists as to whether Discover's threats of criminal prosecution against his wife during debt collection constituted outrageous conduct under Tennessee law. For the following reasons, we **AFFIRM** the district court's decision to deny Plaintiff's Motion to Alter or Amend.

**I.**

**A. Factual Background**

In the summer of 2002, Nina Kay MacDermid ["Mrs. MacDermid"], the late wife of Plaintiff-Appellant Donald H. MacDermid ["Plaintiff"], submitted three separate Internet

applications for Defendant-Appellee Discover Financial Services, LLC ["Discover"] credit cards. ROA 151-52, 984-85. The application contained terms of use which required that "the information being submitted [be] true and accurate." ROA 704. It was a violation of those terms to request "issuance of a Discover credit card in a party's name without that party's consent or knowledge." *Id.* On each of the three applications, Mrs. MacDermid listed her husband as the "Primary Applicant" and listed herself as an "Authorized Buyer." ROA 986-97. She also provided her husband's birth date and social security number. *Id.* All three credit cards were established in Plaintiff's name as individual accounts, rather than joint accounts shared between the couple. ROA 985. Plaintiff did not apply for the credit cards and the applications submitted to Discover were made "without his knowledge or permission." MacDermid Brief App'x Vol. I, 6; ROA 141, 144.

After receiving the Discover cards in late summer 2002, Mrs. MacDermid made a series of purchases on the newly established accounts totaling approximately $15,000, without her husband's knowledge. ROA 152-54. The record does not indicate that Plaintiff or Mrs. MacDermid made payment to Discover for these charges.

Plaintiff alleged that between February 2003 and June 2003, Discover collection representatives, particularly Ms. Adonica Gilmore ("Ms. Gilmore"), repeatedly phoned the MacDermid residence and threatened Plaintiff and his wife with criminal prosecution if they refused to pay the outstanding debt owed on the Discover accounts. ROA 501. Plaintiff stated that Ms. Gilmore specifically threatened criminal prosecution on April 9, 2003, when Ms. Gilmore told Plaintiff regarding Mrs. MacDermid, "I don't think you want [Mrs. MacDermid] going . . . well you know." ROA 502. It was further alleged that Ms. Gilmore stated that if the matter could not be

resolved, "'I'll just call [a representative of the Giles Country District Attorney's Office] and have the authorities 'take a little trip out to your house.'" ROA 502. At some point during spring 2003, Ms. Gilmore filed a police report with the Giles County Sheriff Office based upon Plaintiff's statements to her that he had not authorized or consented to his wife obtaining the credit cards in his name. ROA 702-03, 730. A representative from the Giles County District Attorney's office later told Ms. Gilmore that no fraud had been committed. ROA 731.

On June 13, 2003, Mrs. MacDermid committed suicide using a hand-gun she had purchased. ROA 120, 239, 383. She left behind a handwritten note to Plaintiff explaining the "pressure just got the best of me." ROA 383. The note did not mention Discover, credit cards, collection efforts, threats of jail, or fear of incarceration. ROA 383.

Dr. John Koomen, the psychiatrist treating Mrs. MacDermid in the months preceding her death, provided a sworn statement that her medical history indicated a "history of bipolar disease, which had resulted in prior hospitalizations followed by periods of relative stability." ROA 486. One manifestation of this condition was episodes of "extreme financial irresponsibility." *Id.* Dr. Koomen observed that Mrs. MacDermid was "terrified at the prospect of going to jail and causing further embarrassment to her family, particularly her husband." ROA 487. He concluded based on his medical expertise that the allegations of credit card fraud "appeared to be the primary stressor which contributed to the deterioration of her emotional and mental condition in April and May 2003." ROA 488. Dr. Koomen further testified that it was "more probable than not, with reasonable medical certainty, that the precipitating factor in the causation of the death of Nina Kay MacDermid

Case No. 08-5791
*MacDermid v. Discover Fin. Servs.*

were the threats of criminal fraud prosecution and incarceration" by Discover's collection representatives. *Id.*

## B. Procedural History

Following Mrs. MacDermid's suicide, Plaintiff filed this diversity action against Discover in the Middle District of Tennessee on October 9, 2003, raising several claims in his individual capacity and in his capacity as administrator of the estate of his deceased wife. The district court summarized the lengthy sequence of events leading up to its ruling on Discover's Motion to Reconsider, which Plaintiff ultimately challenges in the instant appeal:

> In [his] Complaint, Plaintiff raised claims of outrageous conduct and intentional infliction of emotional distress, violation of the Tennessee Consumer Protection Act, fraud and civil extortion, violation of the Fair Debt Collection Practices Act, and common law credit defamation/libel. The Court granted Defendant's Motion to Dismiss the intentional infliction of emotional distress and Tennessee Consumer Protection Act claims. The Court subsequently granted Defendant's Motion for Summary Judgment with regard to the other claims asserted by Plaintiff. [*MacDermid v. Discover Fin. Servs.* ("*MacDermid I*"), No. 1:03-0111, 2006 WL 1454743 (M.D. Tenn. May 12, 2006).]
>
> Plaintiff appealed to the Sixth Circuit, which affirmed all the dismissals except the intentional infliction of emotional distress claim. *See MacDermid v. Discover Fin. Servs.* [("*MacDermid II*")], 488 F.3d 721 (6th Cir. 2007). The Sixth Circuit stated in part as follows:
>
> > We cannot agree with the dismissal of the outrageous conduct claim at the [Rule] 12(b)(6) stage. While Discover is correct that it was actually owed the debt in question, we disagree with its contention that Mrs. MacDermid was necessarily criminally liable for credit card fraud. As such, Mr. MacDermid has at least stated a claim for outrageous conduct based on

Case No. 08-5791
*MacDermid v. Discover Fin. Servs.*

Discover's threats of criminal prosecution for failure to pay a purely civil debt.

. . .

> It would seem that something beyond the pleadings is required for Discover to show that Mrs. MacDermid had in fact committed fraud against the company-for example, via a copy of the on-line application and an explanation of the material misrepresentations contained therein.

488 F.3d at 729, 731-32.

> After remand, the parties engaged in additional discovery and Defendant filed a Motion for Summary Judgment seeking to dismiss Plaintiff's claims for outrageous conduct. On April 3, 2008, the Court entered an Order granting in part and denying in part Defendant's Motion for Summary Judgment. [*MacDermid v. Discover Fin. Servs.* ("*MacDermid III*"), No. 1:03-0111, 2008 WL 918489 (M.D. Tenn. Apr. 3, 2008).] The Court granted the Motion to the extent that Plaintiff's individual claims against Defendant were dismissed, except for his claim based upon Defendant's threats of jail and criminal prosecution directed to him. The Court also granted the Motion to the extent that Plaintiff's claims concerning threats by Defendant of civil litigation against Mrs. MacDermid were dismissed. In all other respects, however, the Motion for Summary Judgment was denied. The effect of that denial was to leave in place Plaintiff's individual claims for outrageous conduct and Plaintiff's claims, as Administrator of Mrs. MacDermid's Estate, for outrageous conduct based upon Defendant's threats of criminal prosecution directed to her.

> On April 25, 2008, Defendant filed a "Motion to Reconsider", asking the Court to reconsider its Order denying Defendant's Motion for Summary Judgment. With the Motion to Reconsider, Defendant submitted the Affidavit of Valerie Kokoszka ["Ms. Kokoszka"] and three Exhibits-the Internet applications submitted by Ms. MacDermid.

*MacDermid v. Discover Fin. Servs.* ("*MacDermid V*"), No. 1:03-0111, 2008 WL 2235332, at *1-2

(M.D. Tenn. May 29, 2008).

The district court granted Discover's Motion for Reconsideration and dismissed with prejudice, on summary judgment, Plaintiff's claim of outrageous conduct in his capacity as Administrator of Mrs. MacDermid's Estate. *MacDermid v. Discover Fin. Servs.* ("*MacDermid IV*"), No. 1:03-0111, (M.D. Tenn. May 1, 2008); ROA 1019. The district court reconsidered its prior denial of summary judgment because of its finding that the newly submitted exhibits and affidavit of Ms. Kokozska, a Discover Department manager who handled fraudulent claims, established that Mrs. MacDermid's conduct appeared to violate various provisions of the Tennessee criminal code, specifically Tenn. Code Ann. § 39-14-118(a) and (b)(4), relating to fraud, as well as Tenn. Code Ann. § 39-14-150, pertaining to identity theft. ROA 1017-19. Accordingly, the court concluded Discover's "threats to criminally prosecute Ms. MacDermid could not, as a matter of law, constitute outrageous conduct." ROA 1019.

On May 5, 2008, the district court granted Plaintiff's motion for voluntary dismissal without prejudice of his claim for outrageous conduct asserted in his individual capacity. ROA 1025-26. That same day, Plaintiff filed a Motion to Alter or Amend the district court's order granting Discover's Motion for Reconsideration. ROA 1027-33. He argued that the record did not support the conclusion that, as a matter of law, Mrs. MacDermid was guilty of a criminal act. ROA 1030-32. In denying Plaintiff's Motion to Alter or Amend on May 29, 2008, the district court declared:

> [i]t was not necessary for [Discover] to prove that Ms. MacDermid was actually "guilty" of anything, nor was it necessary for the Court to make any ruling with regard to this issue. The fact that Ms. MacDermid's conduct fit precisely into the language of several criminal statutes indicates that [Discover] could have reasonably prosecuted Ms. MacDermid had it chosen to do so. Under those circumstances, no reasonable juror could find that Defendant committed outrageous conduct in threatening to do so, and summary judgment in Defendant's favor was mandated.

Case No. 08-5791
*MacDermid v. Discover Fin. Servs.*

*MacDermid V*, 2008 WL 2235332, at *7. Plaintiff timely appealed. ROA 1059.

**II.**

"While [we] generally review[ ] the denial of a Rule 59(e) motion to alter or amend a judgment for an abuse of discretion, [we apply] a *de novo* standard of review [ ] when the Rule 59(e) motion seeks review of a grant of summary judgment." *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1047 (6th Cir. 2001).

"The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). The party moving for summary judgment bears the initial burden of showing there is no material issue in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a party's motion for summary judgment, this court "must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered." *Kalamazoo Acquisitions v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

Because we sit in diversity, we apply the law of the forum state of Tennessee when reviewing Plaintiff's outrageous conduct claim. *See Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008).

**III.**

The sole cause of action before this Court is Plaintiff's claim for intentional infliction of emotional distress made in his capacity as Administrator of the Estate of Mrs. MacDermid. He argues that a genuine issue of material fact exists as to whether Discover's conduct toward Mrs.

MacDermid was sufficiently outrageous so as to give rise to tort liability. Accordingly, he claims the district court erred in granting Discover summary judgment and in denying his Motion to Alter or Amend.

As this Court stated in *MacDermid II*, "Tennessee state courts recognize the tort of intentional infliction of emotional distress, although they typically refer to this tort as 'outrageous conduct.'" 488 F.3d at 729 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997)). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Bain*, 936 S.W.2d at 622 (quoting Restatement (Second) of Torts § 46(1)). To prove liability for outrageous conduct under Tennessee law, a plaintiff must prove: (1) the conduct complained of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of resulted in serious mental injury. *Id.*

Plaintiff argues on appeal that the district court erred when it ruled Discover's conduct during debt collection did not satisfy the second element of the test as a matter of law. As the Tennessee cases establish, "[t]he outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery." *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 39 (Tenn. 2005). Liability does not arise for "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain*, 936 S.W.2d at 622 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)). Nor is it

> enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

> characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Id.* at 623 (quoting *Medlin*, 398 S.W.2d at 274 (quoting Restatement (Second) of Torts § 46 cmt. d (1965))).

Plaintiff argues that the tactics employed by Discover during debt collection constituted "outrageous conduct." In particular, he takes issue with the alleged threats of criminal prosecution levied against Mrs. MacDermid by Discover collection representatives between February 2003 and June 2003. Tennessee courts have previously recognized that aggressive debt collection practices can give rise to liability for outrageous conduct. *See, e.g.*, *Moorhead v. J.C. Penny Co.*, 555 S.W.2d 713, 717-18 (Tenn. 1977). In general, a "creditor has a right to urge payment of a just debt, and to threaten to resort to proper legal procedure to enforce the obligation." *Id.* at 718 (internal citation omitted). By extension, a creditor is not liable for injuries resulting from an attempt to collect by "reasonable means." *Id.* But a creditor can be held liable if it resorted to "improper methods" to collect a debt. *Id.* As elaborated upon by the Tennessee Supreme Court:

> the view generally taken is that improper methods used to collect a debt may be the basis for the maintenance of an action for a mental or emotional disturbance produced thereby, or for a bodily injury or illness resulting from such mental or emotional disturbance, especially where the circumstances attending the effort to collect the claim are such as to invoke the general rule that one who wilfully or intentionally causes great emotional distress, *without justification*, is liable for such injuries.

*Id.* (emphasis added).

We applied the above principles in *MacDermid II* and found, in relevant part, that allegations of "false threats by Discover employees of *criminal* prosecution" were sufficient to make a claim for outrageous conduct at the pleading stage. *See* 488 F.3d at 731. As the parties agree, a creditor may not threaten criminal prosecution solely for "failure to pay a purely civil debt." *See id.* at 729. Discover had argued, however, that criminal prosecution of Mrs. MacDermid was warranted because Mrs. MacDermid had "committed credit card fraud by unlawfully submitting Plaintiff's personal information to obtain the credit cards from Discover via the internet." *Id.* But the Court refused to dismiss the claim on this ground because it concluded that "something beyond the pleadings is required for Discover to show that Mrs. MacDermid had in fact committed fraud against the company." *Id.*

*MacDermid II* did not deny Discover's motion to dismiss because it found that threats of criminal prosecution during debt collection were outrageous per se. Rather, the Court found dismissal of Plaintiff's claim of outrageous conduct on behalf of his wife's estate inappropriate at the pleading stage because Discover had not offered actual evidence that Mrs. MacDermid committed fraud. *See id.* Nevertheless, the Court left the door open for Discover to offer such evidence by expressly suggesting that fraud could be proven through submission of Mrs. MacDermid's "on-line application and an explanation of the material misrepresentations contained therein." *Id* at 732. The Court held, consistent with Tennessee law, that threatening criminal

prosecution during debt collection is not a basis for tort liability as a matter of law when such

prosecution would be justified.[1]

It is notable that *MacDermid II* emphasized that Discover's threats of prosecution must be

based upon criminal conduct directed at Discover, rather than at Plaintiff, for them to be justified.

*Id.* at 731-32. Specifically, the Court stated Discover needed to produce evidence "to show that Mrs.

MacDermid had in fact committed fraud *against the company*" in order for Plaintiff's claim to be

dismissed as a matter of law. *Id.* (emphasis added). The Court further remarked:

> if Discover is somehow alleging that Mrs. MacDermid committed fraud on her
> husband as opposed to the company, then we do not see how Discover could
> reasonably suggest to Mr. MacDermid that criminal fraud charges would be pursued
> against Mrs. MacDermid on his behalf, unless of course he had consented to such
> action.

*Id.* at 732. In other words, *MacDermid II* held Discover could not vicariously assert Plaintiff's

rights as a victim under Tennessee criminal law unless he consented to it. *See id.*

In her affidavit, Discover collection representative Adonica Gilmore claimed that a criminal

complaint was filed against Mrs. MacDermid based on Plaintiff's statement that his wife had

committed fraud against him. *See* ROA 703. Discover also suggests this in the brief it filed with

---

[1]Plaintiff allocates a substantial portion of his brief summarizing cases dealing with claims of outrageous conduct in the context of debt collection, none of which involve threats of criminal prosecution. The extent of Plaintiff's actual application of these cases to the instant facts appears to be a cursory analogy to *Moorhead*, where the Tennessee Supreme Court held that a claim for outrageous conduct survived summary judgment when there was evidence that the creditor aggressively pursued collection of a non-existent debt against the plaintiffs. *See Moorhead*, 555 S.W.2d at 717. *MacDermid II* already found *Moorhead* inapplicable to the instant case because Discover had a legitimate right to pursue payment against Mrs. MacDermid. 488 F.3d at 731. Plaintiff has not offered any reason why we should revisit this issue nor why we should not accept *MacDermid II*'s broader holding that threats of criminal prosecution do not constitute outrageous conduct when justified.

this Court. But Plaintiff repeatedly denied that Mrs. MacDermid had defrauded him during his deposition. ROA 181-82. He instead claimed it was Discover who committed fraud by issuing the cards in his name without his consent. ROA 186, 217, 291.

On three occasions between February and March 2003, Discover requested Plaintiff to sign a prepared affidavit and assist in the prosecution of Mrs. MacDermid for fraud. ROA 402-06. There is no evidence, however, that Plaintiff complied with this request. ROA 403 (affidavit left blank and unsigned). Moreover, in a letter dated March 3, 2003, Plaintiff plainly indicated to Discover that he would not assist in the prosecution of his wife. ROA 401. He testified to the same during his deposition. ROA 333-35. In light of this evidence, there is at least a genuine issue of fact, if not conclusive establishment of one in Plaintiff's favor, that Plaintiff did not consent to the prosecution of his wife. Therefore, Discover's threats of criminal prosecution must stem from criminal conduct committed by Mrs. MacDermid against the company, rather than against Plaintiff, for Discover to be shielded from outrageous conduct liability.

**A. Evidentiary Standard**

Plaintiff does not challenge the conclusion of *MacDermid II* that justified threats of criminal prosecution during debt collection are not grounds for outrageous conduct. Nor does Discover contest the inverse proposition that unjustified threats of criminal prosecution would establish Discover's conduct as outrageous. Thus, the instant appeal hinges on whether Discover had grounds to file a criminal complaint against Mrs. MacDermid such that its threats of criminal prosecution were justified.

Case No. 08-5791
*MacDermid v. Discover Fin. Servs.*

A key issue before the Court is which evidentiary standard to apply in deciding whether Discover's threats of criminal prosecution were justified.[2] It does not appear Tennessee courts have addressed this precise issue. Nevertheless, we are not without guidance as they have previously analyzed civil claims for outrageous conduct based on a defendant's *actual causation* of criminal prosecution, rather than mere threat of one, under a malicious prosecution framework. *See Southeastern Mfg. & Indus. Supply v. Equifax*, 1984 Tenn. App. LEXIS 3375, at *13-16 (Tenn. Ct. App. Dec. 28, 1984). Malicious prosecution, which involves the question of civil liability for those who trigger the criminal prosecution of innocent persons, bears relevance to the case at bar because Plaintiff essentially argues that Mrs. MacDermid was innocent of criminal conduct and that she could not have been legitimately prosecuted had Discover carried out its threats to do so.

To sustain a successful claim of malicious prosecution, in addition to showing the defendant brought the action with "malice" and that the underlying criminal prosecution terminated successfully in plaintiff's favor, one must demonstrate an absence of probable cause. *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992) (involving an employee's suit against his employer for causing his arrest for grand larceny); *see Schlueter v. S. Energy Homes, Inc.*, 252 Fed. App'x 7, 9 (6th Cir. 2007) (recognizing Tennessee law requires the absence of probable cause to maintain a malicious prosecution claim). Probable cause is established where "facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused was guilty

---

[2]The district court denied Plaintiff's Motion to Amend or Alter based on its finding that Mrs. MacDermid could have been "reasonably prosecuted" under Tennessee's criminal code "had [Discover] chosen to do so." *MacDermid V*, 2008 WL 22355332, at * 7. But the district court did not elaborate upon what it meant by "reasonably prosecuted" nor did it cite to Tennessee authority for this proposition.

of the crime charged." *Id.* at 248 (internal citation omitted). Applying this objective standard to the case at bar, Discover would be justified in threatening Mrs. MacDermid with criminal prosecution for purposes of the outrageous conduct claim if an ordinarily prudent person could believe she was guilty of criminal conduct. It must be emphasized that actual guilt or innocence of the target of the prosecution is immaterial to a probable cause determination. *See Lantroop v. Moreland*, 849 S.W.2d 793, 797 (Tenn. App. 1992). All that matters is whether Mrs. MacDermid could have been legitimately prosecuted, not necessarily convicted, at the time Discover made its threats.

**B. Application of Probable Cause**

In granting Discover's Motion for Reconsideration, the district court cited three separate provisions of the Tennessee criminal code, which it determined Mrs. MacDermid violated: (1) Tenn. Code Ann. § 39-14-118(a) and (b)(4); and (2) Tenn. Code Ann. § 39-14-150. ROA 1016-19. Because we find there was probable cause to prosecute Mrs. MacDermid under § 39-14-118(a) and (b)(4), we need not decide whether grounds similarly existed under § 39-14-150.

Section 39-14-118 governs the unauthorized use and possession of credit cards. Part (a) states that "[a] person commits the crime of illegal possession of a credit or debit card who, knowing the person *does not have the consent of the* owner or *issuer*, takes, exercises control over or otherwise uses that card or information from that card." Tenn. Code. Ann. § 39-14-118(a) (emphasis added). Part (b)(4) of § 39-14-118, on the other hand, prohibits the "fraudulent use" of a credit card by an individual if he or she does so with the knowledge that use of the card is

"*unauthorized* by either the *issuer* or the person to whom the credit or debit card is issued." (emphasis added).[3]

An "issuer" refers to "the business organization or financial institution or its duly authorized agent which issues a credit or debit card." Tenn. Code. Ann. § 39-14-102(5). In this case, the business organization issuing the card was Discover. The reference to "issuer" in § 39-14-118 indicates the provisions protect Discover's rights against fraudulent possession and use of its credit cards, in addition to those of the cardholder. Consequently, as discussed above, Discover would not have needed Plaintiff's consent to cause Mrs. MacDermid's prosecution under the statute. *See MacDermid II*, 488 F.3d at 732 (requiring Plaintiff's consent to the extent Discover's threats of criminal prosecution were premised on violations of his, rather than Discover's, rights under criminal law).

Undisputed evidence in the record establishes there was probable cause to prosecute Mrs. MacDermid under both § 39-14-118(a) and (b)(4). Plaintiff admits that he did not apply for Discover credit cards and that he did not authorize his wife to obtain the credit cards at issue on his behalf. ROA 144; Plaintiff's Br. App'x, Vol. I, 6-7. This is significant because the electronic credit card application on Discover's website contained terms of use, which included a certification that any information submitted was true and accurate. ROA 704. These terms are violated when an applicant requests issuance of a card without consent or knowledge of the named cardholder. *Id.*

---

[3]Tenn. Code Ann. § 39-14-118(b) states in relevant part: "A person commits the crime of fraudulent use of a credit or debit card who uses, or allows to be used, a credit or debit card or information from that card, for the purpose of obtaining property, credit, services or anything else of value with knowledge that . . . . (4) For any other reason the use of the card is unauthorized by either the issuer or the person to whom the credit or debit card is issued."

Case No. 08-5791
*MacDermid v. Discover Fin. Servs.*

According to copies of Mrs. MacDermid's credit card applications and the sworn statement of Valerie Kokoszka, the Discover manager who handled fraud claims, Mrs. MacDermid filled out three applications on Discover's website requesting credit cards solely in Plaintiff's name. ROA 984-97. Although Plaintiff claims in his brief the cards were joint accounts shared between he and his wife, all of the evidence in the record indicates she was merely an "Authorized Buyer" for the accounts.[4] ROA 984-97.

By requesting a credit card in Plaintiff's name without his consent or knowledge, Mrs. MacDermid violated Discover's terms of use and was accordingly deprived of Discover's consent and authority to possess and use its credit cards.[5] While Plaintiff argues that nothing in the record indicates Mrs. MacDermid made a "false or fraudulent statement" to Discover or that she signed any document affirming the truthfulness of her application, he ignores the uncontroverted fact that Mrs. MacDermid was required to electronically certify the truthfulness of the information she provided. In light of these circumstances, the Court finds that the weight of the evidence would "lead an

---

[4]Plaintiff claims that *MacDermid II* established a series of factual propositions, including that Mrs. MacDermid "applied for a joint credit card." ROA 33. But *MacDermid II* merely held that it could not grant a Rule 12(b)(6) motion for Plaintiff's claim of outrageous conduct based on the allegations in his complaint. *See* 488 F.3d at 729, 732. It did not establish the existence of any facts.

[5]One could argue, although Plaintiff does not, that there is a lack of evidence in the record to establish that the violation of the terms of use necessarily meant that her possession and use of the cards was not "authorized" by Discover given that the terms of use are not actually in the record. In other words, we should infer that Mrs. MacDermid could have lied on her application and violated the terms of use while still enjoying authority to possess and use the Discover credit cards. The Court finds this not to be a "reasonably drawn" inference from which the nonmoving party may benefit on summary judgment. *See Kalamazoo Acquisitions*, 395 F.3d at 342. The very phrase "terms of use" indicates that authority to use the card is conditioned on compliance with the terms set forth by the credit card company. Therefore, we decline to find this minor imperfection in the record as grounds for a genuine issue of material fact.

ordinarily prudent person to believe" that Mrs. MacDermid had committed fraudulent possession and use of a credit card under § 39-14-118(a) and (b)(4). Therefore, there was probable cause that she engaged in criminal conduct such that threats of prosecution would have been justified.

## C. Jury Determinations of Probable Cause

Plaintiff does not meaningfully dispute that the evidence, viewed in a light most favorable to him, supported the existence of probable cause under § 39-14-118(a) and (b)(4). Indeed, he does not mention either of these provisions in his brief, much less analyze their application to the case at bar. Plaintiff does contend, however, that a jury determination is required to resolve factual issues, such as Mrs. MacDermid's intent, in order to ascertain if she engaged in prosecutable conduct. Accordingly, he denies the suitability of deciding probable cause on summary judgment.

Tennessee courts hold that a jury is required to determine probable cause in a malicious prosecution context "where reasonable minds could differ" as to its existence. *Roberts*, 842 S.W.2d at 249. In *Roberts*, the Tennessee Supreme Court reviewed a lower court's award of summary judgment of the plaintiff's claim of malicious prosecution in favor of his employer Federal Express. *Id.* at 246. Federal Express had caused the plaintiff's arrest warrant for grand larceny after he allegedly sought to remove various small items from the shipping warehouse where he worked. *Id.* at 247. *Roberts* ultimately reversed the district court's entry of summary judgment in favor of Federal Express because the court concluded "reasonable minds could differ as to whether probable cause existed for bringing charges against [the] [p]laintiff." *Id.* at 249.

Although *Roberts* did not provide an explanation for its holding, it is apparent from the opinion's extended recitation of the facts that the court found it quite possible that the plaintiff's

"theft" was unintentional. *See id.* at 247. In particular, the court called attention to the plaintiff's "exemplary job record" with the company over nine years as well as his demonstrated honesty in the workplace, including an instance where he turned in a box of 13 diamond rings that spilled out of a package. *Id.* The court also noted that the plaintiff had helped Federal Express uncover employee theft on prior occasions. *Id.*

With respect to the alleged theft, the court indicated that the plaintiff was very drowsy the day the items were discovered in his jacket pocket because he was taking Valium for severe back pain. *Id.* Furthermore, the court mentioned that the plaintiff, without prompting, had told a co-worker that he had spotted the items lying around on the warehouse floor and that he intended to turn them in, a revelation which a prospective thief is unlikely to make. *See id.* Finally, the court mentioned that the plaintiff was discovered with the items in his jacket by an electronic screening device even though he was well aware of other exits in the warehouse that did not have such a device–another sign that the plaintiff was not attempting to steal from the workplace. *Id.* In light of these circumstances, *Roberts* concluded that "reasonable minds could differ as to whether probable cause existed for bringing charges against [the] [p]laintiff." *Id.* at 249.

None of the sort of exculpatory facts found in abundance in *Roberts* are present in this case. Plaintiff has not cited to any evidence that would have undermined Discover's case for probable cause had it initiated Mrs. MacDermid's prosecution. The overwhelming evidence, as explained *supra*, would have led an "ordinarily prudent person to *believe*," even if not conclude with absolute certainty, that Mrs. MacDermid was guilty of unlawful credit card possession and use. *Id.* at 248 (emphasis

added). Therefore, we find that reasonable minds could not differ as to the existence of probable cause such that a jury determination was required under *Roberts*.

**D. Relevance of Subjective Belief**

Finally, Plaintiff maintains Discover cannot argue Mrs. MacDermid was culpable under Tennessee criminal law because he claims Discover had a subjective belief that she had not actually committed a criminal offense when it threatened her with prosecution. During oral argument, Plaintiff's counsel asserted the separate, but related, proposition that Discover's conduct was outrageous because it lacked a good faith belief that Mrs. MacDermid had committed a crime. In support of these arguments, Plaintiff calls attention to Ms. Gilmore's admission that the Giles County District Attorney's office had informed her that Mrs. MacDermid's conduct did not constitute fraud. ROA 731. Discover dismisses the significance of this detail by pointing out that Ms. Gilmore further testified that she made no further threats of criminal prosecution against Mrs. MacDermid after she had spoken with the District Attorney's office. ROA 732.

The issue of whether Discover subjectively believed that Mrs. MacDermid's actions were criminal is ultimately immaterial to the outcome of this appeal. Because we sit in diversity, we must apply Tennessee law. *See Uhl*, 512 F.3d at 302. As noted above, the evaluation of evidence for probable cause is an objective analysis which occurs through the perspective of the "ordinarily prudent person." *See Roberts*, 842 S.W.2d at 248. Given that the existence of probable cause defeats a claim of malicious prosecution in Tennessee even when the prosecution was made with malice, see *id.* at 247-48, Ms. Gilmore's state of mind does not raise a factual question whose resolution warrants reversal of summary judgment.

**E. Conclusion**

Analysis of the facts in light of the standard of review on summary judgment demonstrates that probable cause clearly existed to prosecute Mrs. MacDermid under Tenn. Code Ann. § 39-14-118(a) and (b)(4). Accordingly, Discover's legitimate threats of criminal prosecution against her during debt collection failed to constitute outrageous conduct as a matter of law. Therefore, the district court properly denied Plaintiff's Motion to Alter or Amend its prior order granting summary judgment to Discover on the intentional infliction of emotional distress claim made in Plaintiff's capacity as Administrator of Mrs. MacDermid's Estate. To the extent Plaintiff offers other arguments not expressly addressed by this opinion, we find them without merit.

**IV.**

Accordingly, for the reasons stated above, we **AFFIRM** the district court's decision to deny Plaintiff's Motion to Alter or Amend.