**Angeli Chan SELITSCH**

v.

**Michael John SELITSCH**

Court of Appeals of Tennessee,
AT NASHVILLE.

August 18, 2015 Session

Filed October 14, 2015

Application for Permission to Appeal
Denied by Supreme Court
February 17, 2016

Michael John Selitsch, Murfreesboro, Tennessee, Pro Se.

Brad W. Hornsby, Murfreesboro, Tennessee, for the appellee, Angeli Chan Selitsch.

## OPINION

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Husband filed a Tenn. R. Civ. P. 60.02 motion to set aside an agreed upon Final Decree of Divorce. He claims the agreed order was the result of a mutual mistake concerning one of his military benefits and that he lacked the mental capacity to understand the agreement. The parties married in 1989. Husband retired from the military in 2009 with 100% disability. Wife filed for divorce in 2012. Over the course of several months, the parties negotiated an agreement as to the division of all of their marital property. The agreement was announced in court in August 2013, at which time both spouses were called to testify concerning their understanding and approval of the agreement. The final divorce decree was subsequently approved by the trial court and entered in January 2014. Pursuant to the final decree, Husband received the entirety of his Veterans Affairs disability benefits, and Wife received one-half of Husband's other retirement benefit. Husband subsequently filed a Rule 60.02 Motion to Set Aside Marital Agreement for Lack of Capacity and Mistake. He contended that the parties mistakenly believed that his military retirement benefit was marital property when, as a matter of law, the Uniformed Services Former Spouses Protection Act prohibits the courts from treating a disability benefit as marital property. He also contended that he lacked the mental capacity to appreciate the nature of the hearing in which he agreed to the division of marital property due to the pain and stress related to his disease, as well as his medication. The trial court denied relief on both grounds. We affirm. The trial court acted within its discretion by denying Rule 60 relief on the finding that Husband failed to present sufficient proof to obtain relief on the ground of mental incapacity. Furthermore, a mistake of law is not a ground for Rule 60.02 relief, and the trial court acted within its discretion when it denied relief on this ground and enforced the parties' agreement.

Angeli Chan Selitsch ("Wife") and Michael John Selitsch ("Husband") were married in 1989. Throughout the marriage, Husband was active in the military until 2008 when he was placed on the Temporary Disability Retired List for multiple sclerosis. The following year, he was removed from the temporary list and re-

tired at 100% disability pursuant to 10 U.S.C. § 1201.

In 2012, Wife initiated divorce proceedings. Over the course of several months, the parties and their attorneys negotiated an agreement regarding the grounds of their divorce and the division of marital property. At a hearing on August 20, 2013 ("the August hearing"), the parties announced the terms of their agreement to the trial court. Importantly for purposes of this appeal, the parties announced that they had agreed that Husband's current Veterans Affairs ("VA") disability benefits would be awarded solely to him, but that the parties would share equally Husband's other military retirement benefit. The parties also agreed that if Husband took any action to increase his VA disability, which would result in a decrease in his military retirement, Wife would be awarded one-half of the increased amount.

Husband was represented by stand-in counsel at the August hearing because counsel of record was unavailable. In response to questions from the court, Husband testified that he had fully discussed the matters at issue with his counsel of record and that he had no objection to proceeding with stand-in counsel. Husband acknowledged that the announced agreement would represent the ultimate terms of his divorce, would be reduced to writing, and would be reviewed by his counsel of record before being submitted to the court. Husband and Wife each testified that they understood the terms of the agreement and that the agreement constituted a fair and equitable resolution of their divorce. Due to the absence of Husband's counsel of record, the agreed upon final decree was not presented to the court at the hearing.

Wife's counsel submitted a proposed final decree to the court on September 4, 2013. Husband filed a timely objection concerning issues that did not pertain to the retirement benefits at issue in this appeal. Thereafter, Husband's counsel filed a series of motions to revise other provisions; nevertheless, as before, none of Husband's objections pertained to the retirement benefit. Following three months of hearings, counsel for both parties approved a proposed final decree of divorce that included the same retirement provisions as the order that had been presented for approval in September. The final decree of divorce as approved by the trial court was entered on January 13, 2014.

The final decree of divorce states in pertinent part:

1. That on August 20, 2013, the parties appeared before the court and were placed under oath and the following agreements were announced, which are hereby accepted and incorporated into this order.

. . . .

h. Husband is awarded his current VA disability with no claims of wife.

i. Wife is awarded one-half of the remaining military retirement of Husband. There has been compliance with the Former Spouses' Protection Act given that the parties were married on March 5, 1989, to the present, a period well in excess of ten (10) years. In addition, during the marriage, Husband has served in excess of ten (10) years in the military. Likewise, there has been compliance with the Servicemember's Civil Relief Act given that Husband has retired from the military and voluntarily entered an appearance. . . . In the event that Husband increases his VA disability rating, Wife is awarded one-half of any increase in his VA disability payments. The parties acknowledge that [the Defense Finance and Accounting Service] will not honor a division of a

VA disability under such circumstances, but Husband will immediately pay to Wife said amount until such time that he can set up an allotment paying said amount to Wife.

Wife attempted to obtain her one-half interest of the retirement pay from the Defense Finance and Accounting Service ("DFAS") pursuant to the Uniformed Services Former Spouse Protection Act, 10 U.S.C. § 1408. However, the agency denied her application stating that, "the entire amount of the member's retired/retainer pay is based on disability, thus there are no funds available for payment under the Uniformed Services Former Spouse Protection Act." Wife then filed a motion under Rule 60 of the Tennessee Rules of Civil Procedure, requesting that Husband set up an allotment allowing one-half of his "retired/retainer pay" to be sent directly to Wife as the final decree specifically authorized.

After the trial court modified the original order to set up an allotment, Husband filed a Motion to Set Aside Marital Agreement for Lack of Capacity and Mistake, contending that he lacked the capacity during the August hearing to be aware of the nature and consequences of the parties' agreement and that he mistakenly believed his military retirement was a marital asset. After a hearing, the trial court denied Husband's motion, finding that Husband was sufficiently competent and that the allotment best served the original intentions of the parties in reaching the agreement.

## Standard of Review

Although not explicitly stated in Husband's motion, the parties treat this motion as a motion under Rule 60.02 of the Tennessee Rules of Civil Procedure. Accordingly, we analyze it as such.[1] Rule 60.02 provides, in pertinent part, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for ... (1) mistake, inadvertence, surprise or excusable neglect ... or (5) any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02.

We review motions for relief based on Rule 60.02 grounds under an abuse of discretion standard. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn.1993); *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn.2012). "Abuse of discretion is found 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *Morgan*, 363 S.W.3d at 487 (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn.2008)). Thus, the appellate court should "review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524–25 (Tenn. 2010) (internal citations omitted).

## Analysis

Husband contends that the trial court erred in denying his Motion to Set Aside

---

1. Further, because this motion was filed more than thirty days after entry of the final divorce decree, it precludes the possibility of this motion being filed under Rule 59 of the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civ. P. 59.02.

Marital Agreement for Lack of Capacity and Mistake for two reasons. First, Husband argues that the trial court abused its discretion by denying his motion because he lacked the capacity to fully appreciate and understand the content and ramifications of the August hearing. He also argues that the court abused its discretion because, at the time that he entered into the property settlement agreement, he mistakenly believed his military retirement benefits were divisible marital property under federal law.

## I. LACK OF CAPACITY

■ Husband argues that the trial court abused its discretion by denying his motion to set aside the final divorce decree because Husband lacked capacity at the August hearing.

In support of his motion, Husband presented testimony from his physician relating to Husband's medical diagnosis, treatment, and medication regiment. Husband's physician testified that individuals with multiple sclerosis experience "flare ups," or periods of exacerbated symptoms, as well as periods of remission. The physician also testified that Husband was prescribed a variety of pain medications that may cause decreased cognition and comprehension. He stated that these medications, in combination with the stress and exhaustion from coping with the disease, can lead to a decreased capacity during a "flare up" period. On cross examination, however, the physician acknowledged that he did not have personal knowledge of the medication taken by Husband at the time in question and could not state whether Husband was experiencing a "flare up" during the August hearing.

The trial court also heard testimony from Husband regarding his mental state on the date at issue. Husband testified that during a "flare up" he would take additional medication in order to cope with the pain and that he took an increased dosage prior to appearing in court for the August hearing. However, Husband testified that he was not certain whether he was experiencing a "flare up" the day of the August hearing, and Husband further testified that he was capable of driving himself to court that day.

Wife testified that, based on her 26 years of marriage to Husband, Husband's physical movements and speech appeared normal at the August hearing and all subsequent court appearances.

After considering this evidence, the court acknowledged that Husband has legitimate medical and mental issues. Nevertheless, based on the testimony presented and its own observations, the trial court stated that it "came away from [the August] hearing with the contemplation that both parties had understood the questions the Court asked, and both parties had answered." Ultimately, the court concluded that Husband had not provided sufficient evidence to set aside the agreement for lack of capacity.

■ Relief under Rule 60.02 is considered an exceptional remedy that is designed to strike a proper balance between the competing principles of finality and justice. *Furlough v. Spherion Atl. Workforce, LLC,* 397 S.W.3d 114, 127 (Tenn. 2013). The burden is on the party seeking this extraordinary relief to establish facts explaining why such relief is justified. *Wine v. Wine,* 245 S.W.3d 389, 397 (Tenn. Ct.App.2007).

A party seeking relief under Rule 60.02 must substantiate the request with clear and convincing evidence." *McCracken v. Brentwood United Methodist Church,* 958 S.W.2d 792, 795 (Tenn.Ct.App.1997). "Clear and convincing evidence means

evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn.1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn.2009) (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn.2005)). In general, "the bar for attaining relief is set very high and the burden borne by the movant is heavy." *Johnson v. Johnson*, 37 S.W.3d 892, 895 n. 2 (Tenn.2001).

*Furlough*, 397 S.W.3d at 128.

Here, although Husband presented evidence to show that he suffers from diminished cognition and comprehension on occasion, he failed to clearly and convincingly establish that he was unable to understand the nature and ramifications of the August hearing. Neither he nor his physician could testify with reasonable certainty regarding Husband's mental condition on August 20, the exact medications he took, or whether Husband was experiencing a "flare up" at that time.

Further, although Husband argues that his confusion was aggravated because the agreement announced in court "was not the result of any prior negotiation or agreement involving the appellant," this contention is not supported by the record. Instead, the record reflects that the announced agreement was the culmination of communications spanning several months. Importantly, Husband does not contend that he lacked capacity to understand the agreement at any time other than during the August hearing. Moreover, Husband was represented by counsel throughout the trial court proceedings. His counsel of record assisted in drafting the agreed order that was announced to the court, and

thereafter, his counsel of record, not his stand-in counsel, approved the final decree of divorce that was entered on January 13, 2014.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion by denying relief under Rule 60.02 on the grounds of lack of capacity.

## II. THE DIVISIBILITY OF HUSBAND'S MILITARY FUNDS

Husband next argues that the trial court abused its discretion in declining to grant Rule 60.02 relief on the grounds of mutual mistake. He contends that the trial court erred in applying the Tennessee Supreme Court case of *Johnson v. Johnson*, 37 S.W.3d 892 (Tenn.2001) to enforce what it believed was the intent and agreement between the parties. He also argues that, at the time the parties entered into the agreement, they mistakenly believed that Husband's military retirement benefits were divisible marital property under federal law.

### A. Disability Benefits and Military Retirement Funds

Before considering the merits of Husband's argument, it is helpful to understand the legal landscape regarding marital claims to disability benefits and military retirement funds.

Under federal law, the Secretaries of the Military Departments have the authority to retire a member of the Armed Forces "if the member suffers from a physical disability, which renders the member unfit to perform the duties of their office, grade, rank, or rating." *In re Marriage of Martin*, No. 106912, 2013 WL 1149674, at * 4 (Kan.Ct.App. March 15, 2013).

A service member may receive a permanent disability retirement—commonly

referred to as Chapter 61 retirement—if the Secretary makes the following determinations: (1) Based upon accepted medical principles, the disability is of a permanent and stable nature; (2) The disability is not the result of intentional misconduct or willful neglect by the member; and (3) The member has either a Department of Defense disability rating of 30% or greater or at least 20 years of service.

*Id.* (citing 10 U.S.C. § 1201).

■ In addition to Chapter 61 benefits, disabled military members may also be eligible to receive VA disability benefits. *Id.* (citing 38 U.S.C. § 1101 *et seq.*). To avoid double payment, in order to receive VA disability pay, "a former service member must waive a corresponding portion of his or her retirement pay." *Hillyer v. Hillyer*, 59 S.W.3d 118, 119 (Tenn.Ct.App. 2001) (citing 38 U.S.C. § 5305).[2]

In *McCarty v. McCarty*, the United States Supreme Court held that federal law governing military retirement pay impliedly pre-empted state divorce property division laws. *McCarty v. McCarty*, 453 U.S. 210, 236, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In response, Congress passed the Uniformed Services Former Spouses

Protection Act ("USFSPA"), 10 U.S.C. § 1408. *Johnson*, 37 S.W.3d at 895. The USFSPA "permitted state courts to treat a military retiree's 'disposable retired pay' as community property and to divide it among [the parties to a divorce]." *Id.* (quoting 10 U.S.C. § 1408(c)(1)). Further, the USFSPA created a payment system under which, akin to garnishment, the retiree's ex-spouse can receive payment of his or her ordered allocation of the "disposable retired pay" directly from the military. *Id.* (citing 10 U.S.C. § 1408(c)(1) & (d)); *see also Gonzalez v. Gonzalez*, No. M2008–01743–COA–R3–CV, 2011 WL 221888, at *3 (Tenn.Ct.App. Jan. 24, 2011), *perm. app. denied* (Tenn. May 26, 2011).

■ There are, however, several limitations to the USFSPA's provisions. Importantly for purposes of this appeal, under the USFSPA, state courts may consider only "disposable retired or retainer pay" as divisible community property in divorce proceedings.[3] *Mansell v. Mansell*, 490 U.S. 581, 594, 109 S.Ct. 2023, 104 L.Ed.2d 675, (1989); 10 U.S.C. § 1408(c)(1). Under the statute, "disposable retired pay" is defined as follows:

2. 38 U.S.C. § 5305 provides as follows:

[A]ny person who is receiving pay pursuant to any provision of law providing retired or retirement pay to persons in the Armed Forces ... and who would be eligible to receive pension or compensation under the laws administered by the Secretary if such person were not receiving such retired or retirement pay, shall be entitled to receive such pension or compensation upon the filing by such person with the department by which such retired or retirement pay is paid of a waiver of so much of such person's retired or retirement pay as is equal in amount to such pension or compensation.

3. Additionally, under the USFSPA, "only a former spouse who was married to a military member 'for a period of 10 years or more

during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay' is eligible to receive direct community property payments." *Mansell*, 490 U.S. at 585, 109 S.Ct. 2023 (quoting 10 U.S.C. § 1408(d)(2)). Also, "the Federal Government will not make community property payments that exceed 50 percent of disposable retired or retainer pay." *Id.* at 585, 109 S.Ct. 2023 (citing 10 U.S.C. § 1408(e)(1)). However, the USFSPA "does not prohibit a Tennessee court from awarding more than 50% of a [military member's] retirement to [his or her] former spouse when making an equitable distribution of marital property in the course of a divorce proceeding." *Gonzalez*, 2011 WL 221888, at *5.

The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which—

(A) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

(B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

(C) *in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired* (or the date on which the member's name was placed on the temporary disability retired list); or

(D) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

10 U.S.C. § 1408(a)(4) (emphasis added).

In *Mansell v. Mansell*, the United States Supreme Court considered the definition of "disposable retired pay." *Mansell*, 490 U.S. at 594, 109 S.Ct. 2023. In that case, a husband and wife signed a property settlement agreement that divided the portion of the husband's military retirement pay that he had waived in order to receive veterans' disability pay. *Id.* at 586, 109 S.Ct. 2023. The agreement was incorporated into a divorce decree. Several years later, the husband filed a motion to modify the decree, arguing that the waived retirement benefits could not be divided as a matter of federal law. The

California courts denied relief, suggesting that federal law permitted state courts to treat disability benefits as community property. *Id.* at 586–87, 109 S.Ct. 2023; *see also* 2 Equit. Distrib. of Property, 3d § 6:6.

On review, the Supreme Court recognized that certain disability payments received in lieu of retirement pay are not included in a military member's disposable retired or retainer pay. *Mansell*, 490 U.S. at 594, 109 S.Ct. 2023. Accordingly, the Court held that section 1408(a)(4)(B) of the USFSPA prohibits such funds from being treated as community property subject to division upon divorce. *Id.* at 594–95, 109 S.Ct. 2023.

However, following *Mansell*, "it remained unsettled whether a *post-divorce* waiver of retirement pay in exchange for a corresponding amount of disability pay could reduce a former spouse's previous award, as marital property, of a portion of the military retirement pay." *Hillyer*, 59 S.W.3d at 119 (emphasis added). In *Johnson v. Johnson*, the Tennessee Supreme Court considered this issue. *Id.* In that case, the parties entered into a marital dissolution agreement ("MDA") that awarded the wife "one-half of all military retirement benefits due" the husband. *Johnson*, 37 S.W.3d at 894. The husband subsequently elected to receive a portion of his retirement pay in the form of disability benefits, resulting in a reduction of his retirement pay by a corresponding amount to avoid double payment. *Hillyer*, 59 S.W.3d at 119 (citing *Johnson*, 37 S.W.3d at 894). The reduction of the husband's retirement pay consequently resulted in a reduction of the wife's awarded amount of the husband's military benefits pursuant to the MDA. The trial court denied the wife's petition to modify the final decree which asked the court to order the husband to pay alimony in the same

amount as her payments had been reduced or to modify the judgment pursuant to Tenn. R. Civ. P. 60.02(5). *Id.* The Tennessee Supreme Court reversed, interpreting the provision of the MDA awarding wife one-half of "all military retirement benefits" as including "all amounts [the husband] would ordinarily receive as a result of his retirement from the military." *Johnson,* 37 S.W.3d at 897. The Court held:

> [W]hen an MDA divides military retirement benefits, the non-military spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree. That vested interest cannot thereafter be unilaterally diminished by an act of the military spouse. Such an act constitutes an impermissible modification of a division of marital property and a violation of the court decree incorporating the MDA.

> In so holding, we are undeterred by the United States Supreme Court's ruling in *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). *Mansell* held that the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." The trial court's decree did not divide Mr. Johnson's disability benefits in violation of *Mansell.*

*Id.* at 897–98.

### B. The Parties' Agreement to Divide Disability Benefits

■ Husband argues that the trial court erred by relying on *Johnson* to enforce the original intention of the parties because, in so doing, it acted contrary to

federal law by dividing non-disposable military disability benefits.

Although this case does not involve the same type of non-disposable retired pay at issue in *Mansell* and *Johnson,* given that Husband receives 100% of his VA benefits, the division of property in this case implicates another type of non-disposable pay. The USFSPA precludes the percentage of retirement pay received under United States Code Title 10, Chapter 61, that is based on disability from being considered "disposable retired pay." 10 U.S.C. § 1408(a)(4)(C). Here, Husband's retirement pay falls within Title 10, Chapter 61.[4] Thus, under the USFSPA, Husband's disposable retired pay does not include any portion of his retirement that is based on disability. Accordingly, because Husband has retired at 100% disability, he does not have any disposable retired pay that is subject to division as marital property by a court.

However, Husband's argument fails to acknowledge that the trial court did not make the initial division of Husband's military benefits. Rather, it is abundantly clear from the record that the parties agreed to share equally Husband's military retirement and that Husband would receive 100% of his VA disability benefit.

A careful review of *Mansell* reveals that the United States Supreme Court did not preclude spouses from contractually agreeing to divide non-disposable retired pay. In *Mansell,* the husband's original petition with the trial court asserted grounds for relief including: (1) that the USFSPA prevented state courts from treating his disability benefits as community property; and (2) federal law prevented courts from giving effect to parties' contractual assignment of military benefits. *See Mansell,*

---

4. Specifically, the record reflects that Husband's retirement pay is based on 10 U.S.C. § 1201.

490 U.S. at 586, 109 S.Ct. 2023; *see also* 2 Equit. Distrib. of Property, 3d § 6:6. The wife responded that, even if the husband's contentions were true, res judicata prevented a collateral attack on the final divorce decree. *Mansell*, 490 U.S. at 586 n. 5, 109 S.Ct. 2023.

The California courts denied the husband's petition for relief, holding that federal law permitted state courts to treat disability benefits as community property. *Mansell*, 490 U.S. at 586, 109 S.Ct. 2023. As discussed above, the Supreme Court of the United States reversed, holding that the USFSPA prevents a court from considering non-disposable retired pay as community property during a divorce. *Id.* at 596–95, 109 S.Ct. 2023. Importantly, though, the Supreme Court did not consider the merits of the husband's contract argument or the wife's res judicata argument, and decided the case solely on USFSPA grounds. *See id.* at 586–87, 109 S.Ct. 2023 nn. 5–6; 2 Equit. Distrib. of Property, 3d § 6:6.[5] Thus, *Mansell* cannot be read to preclude enforcement of a parties' contractual agreement to divide military funds that fall outside of the USFS-PA's definition of "disposable retired pay."

This conclusion has been recognized by other state courts as well. *See Poullard v. Poullard*, 780 So.2d 498, 500 (La.Ct.App. 2001) ("[N]othing in either the state or federal law prevents a person from agreeing to give a part of his disability benefit to another"); *Krapf v. Krapf*, 439 Mass. 97, 786 N.E.2d 318, 326 (2003) ("Nothing in 10 U.S.C. § 1408 or in the *Mansell* case precludes a veteran from voluntarily entering into a contract whereby he agrees to pay a former spouse a sum of money that

may come from the VA disability benefits he receives."); *Shelton v. Shelton*, 119 Nev. 492, 78 P.3d 507, 510–11 (2003) (holding that federal law does not prevent a husband from using his disability payments to satisfy a contractual obligation to his wife); *Hoskins v. Skojec*, 265 A.D.2d 706, 707, 696 N.Y.S.2d 303 (N.Y.App.Div. 1999) ("[P]arties are free to contractually determine the division of [military disability] benefits and a court may order a party to pay such moneys to give effect to such an agreement."); *White v. White*, 152 N.C.App. 588, 568 S.E.2d 283, 285 n. 1 (N.C.Ct.App.2002) (noting that *Mansell* does not prohibit military spouses from contracting away their disability benefits), *aff'd*, 357 N.C. 153, 579 S.E.2d 248 (2003); *Evans v. Evans*, No. 02CA2869, 2003 WL 22053929, at *3 (Ohio Ct.App. Aug. 22, 2003) (recognizing that Ohio courts permit parties to a divorce to agree to divide military disability pensions); *Price v. Price*, 325 S.C. 379, 480 S.E.2d 92, 94 (Ct.App.1996) ("While we recognized that *Mansell* does not permit a state court to treat military disability benefits as property subject to equitable distribution, we do not believe the decision can be used by Husband to undermine the Agreement approved by the court."); *Maxwell v. Maxwell*, 796 P.2d 403, 406–07 (Utah Ct.App. 1990) (concluding that a stipulation dividing husband's gross retirement pay, without making the various deductions required by the USFSPA, could be enforced without violating *Mansell*); *Callahan v. Callahan*, 184 Vt. 602, 958 A.2d 673, 677 (2008) (holding that, although the USFS-PA limits an ex-spouse's interest in military retirement pay to "disposable retired pay," parties may contract otherwise and

---

5. In fact, on remand the trial court again denied the husband's relief and continued to enforce the divorce decree on the grounds of res judicata. *In re Marriage of Mansell*, 217 Cal.App.3d 219, 234–35, 265 Cal.Rptr. 227 (Cal.Ct.App.1989). The veteran filed another petition for certiorari with the Supreme Court, but this petition was denied. *Mansell v. Mansell*, 498 U.S. 806, 111 S.Ct. 237, 112 L.Ed.2d 197 (1990).

are not "required to use the precise, federally defined term of art ... to effectuate a legally binding agreement[.]"); *McLellan v. McLellan*, 33 Va.App. 376, 533 S.E.2d 635, 638 (2000) ("[F]ederal law does not prevent a husband and wife from entering into an agreement to provide a set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits.").

Therefore, we conclude that the agreement of the spouses to share Husband's retirement benefit does not violate federal law. Moreover, the fact the agreement is set forth in a court order does not violate federal law. Accordingly, Husband's argument that the property settlement as set forth in the final decree violates federal law is unpersuasive.

We also find no error with the trial court's reliance on our Supreme Court's holding in *Johnson* to enforce the agreement of the parties as expressed in the final decree agreement. The trial court acknowledged that *Johnson* is distinguishable from the present case in certain respects and similar in other respects, including the fact that both involve agreements between former spouses to divide military funds. Given these similarities, the trial court correctly applied a contractual analysis similar to the one applied by the Court in *Johnson*, which was consistent with both state and federal law.[6]

We are not persuaded by Husband's argument that this case differs from *Johnson* because, unlike the parties in *Johnson*, Husband did not enter into a written MDA prior to the property settlement agreement that was announced in court. In *Hillyer v. Hillyer*, this Court considered a case that "differed from *Johnson* in one respect: the [parties] did not have an MDA." *Hillyer*, 59 S.W.3d at 122. In that case, we noted that the Supreme Court in *Johnson* relied on *In re Marriage of Gaddis* in reaching its conclusion, which involved a court ordered property division rather than an agreement of the parties. *Id.* (citing *In re Marriage of Gaddis*, 191 Ariz. 467, 957 P.2d 1010 (Ct.App.1998)). We held that the fact that the parties did not have an MDA did not affect *Johnson*'s application. *Id.* Therefore, as in *Hillyer*, we conclude that the absence of a written MDA is irrelevant.

The parties agreed to award Wife one-half of Husband's non-VA disability benefits, which was approved by the trial court as part of the property settlement agreement set forth in the Final Decree of Divorce. For the foregoing reasons, we conclude that the trial court did not abuse its discretion when it enforced the parties' agreement and denied Husband's motion to set aside the final divorce decree.

## C. Rule 60 Relief Based on Mistake

■ Alternatively, Husband contends the trial court erred in denying his Rule 60

---

**6.** As discussed above, in *Johnson* our Supreme Court applied contract principles to interpret an ambiguous provision of the parties' MDA. *Johnson*, 37 S.W.3d at 896 ("An MDA is a contract and ... [w]hen resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language."). In so doing, the Court concluded that the parties intended to provide the wife with a one-half interest in "all amounts [the husband] would ordinarily receive as a result of his retirement from the military." *Id.* at 897. Because the wife's interest in those benefits "vested as of the date of the entry of the court's decree and could not be unilaterally altered," the Court held that the husband's acceptance of VA disability benefits in lieu of a portion of his military retirement was an impermissible modification of the court decree incorporating the MDA. *Id.* at 897–98. Notably, the Court also stated that enforcement of such agreement did not violate *Mansell*. *Id.* at 898.

motion to set aside the divorce decree based on a mistake. He states that when he entered into the agreement, "with the advice of counsel," he mistakenly believed his military retirement was "owing to" Wife but that he has since learned that "because [his] retirement is one hundred percent based on disability, Federal law prohibits a spouse from claiming against a veteran's disability based retirement."

■ To the extent Husband argues that he is entitled to relief because either he or his attorney did not know that federal law prohibited courts from treating some types of military retirement benefits as divisible marital property, his argument must fail. This argument is not an argument that Husband was mistaken regarding the operative facts of this case. Instead, it is an argument that Husband was ignorant of or mistaken about the application of the law to those facts, and a mistake of law is not a ground for relief under Rule 60.02.

In *Spruce v. Spruce*, this court considered an appeal from a Rule 60.02 motion whereby the mother attempted to set aside a final judgment of divorce that incorporated the parties' agreement relating to the father's child support obligations. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct.App.1998). In affirming the trial court's denial of the mother's Rule 60.02 motion, we noted the following:

A mistake of law 'occurs when a party knows the facts of the case but is ignorant of the legal consequences.' " *Haas v. Haas*, C/A No. 02A01–9709–CV–

00241, 1998 WL 599529, *4 (Tenn.App. W.S., filed September 11, 1998).

The Supreme Court has opined that if "ignorance of the law is a proper ground for relief under Rule 60.02 ..., it is hard to conceive how any judgment could be safe from assault on that ground." *Food Lion, Inc. v. Washington County Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985). In fact, the cases clearly hold that a mistake of law is not a basis for Rule 60.02 relief. *Metropolitan Dev. & Hous. Agency v. Hill*, 518 S.W.2d 754, 768 (Tenn.App.1974).

*Spruce*, 2 S.W.3d at 195.[7]

■ To the extent Husband argues that he is entitled to relief because he was mistaken about the fact that he was 100% disabled, his argument also fails. Parties who seek relief under Rule 60.02(1) have the burden of setting forth "in a motion or petition, or in affidavits in support thereof, facts explaining why [they were] justified in failing to avoid mistake, inadvertence, surprise, or neglect." *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn.1978); see *Haas*, 1998 WL 599529, at *3. Parties fail to satisfy this standard when there is evidence that they could have discovered the error in question. *See In re Joeda J.*, 300 S.W.3d 710, 715 (Tenn.Ct.App.2009) (holding that the father was not entitled to relief under Rule 60.02(1) because either he or his attorney "could have ascertained the date upon which the final judgment actually was entered ....").

Here, Husband has not carried this burden. Although both the motion he filed in the trial court and his brief on appeal

---

7. In *Spruce*, the mother's motion was based on subsections (4) and (5) of Rule 60.02. *Spruce*, 2 S.W.3d at 195. However, *Haas v. Haas* reached a similar conclusion with regard to a motion based on subsection (1) of Rule 60.02. *Haas*, 1998 WL 599529, at *4 ("From the record, it is evident that Father

was aware of the facts of the case, but was ignorant of the law. This is not the type of mistake that Tenn. R.C.P. 60.02 is designed to correct."). Thus, in this case, the specific subsection of Rule 60.02 under which Husband's motion falls is not legally significant.

allege that a mistake of fact occurred, neither document explains why Husband was justified in failing to avoid this mistake. *See Hopkins,* 572 S.W.2d at 640. Instead, the record contains a form from the U.S. Army Physical Disability Agency bearing Husband's address and stating that Husband had been removed from the Temporary Disability Retired List because he had 100% permanent disability on September 14, 2009. Thus, the fact that the Army had given Husband a permanent disability rating of 100% was not new or surprising. Accordingly, he failed to satisfy the standard necessary to obtain relief under Rule 60.02(1), and the trial court did not abuse its discretion in denying his motion.

## IV. FRIVOLOUS APPEAL

Wife argues that Husband's appeal should be deemed frivolous. She contends that Husband caused unnecessary delay in this matter, has failed to adhere to the Tennessee Rules of Appellate Procedure, and has submitted inadequate briefs on appeal.

 This court is statutorily authorized to award just damages against the appellant if we determine the appeal is frivolous or that it was taken solely for delay. Tenn. Code Ann. § 27-1-122. The statute, however, is to be "interpreted and applied strictly so as not to discourage legitimate appeals." *Wakefield v. Longmire,* 54 S.W.3d 300, 304 (Tenn.Ct.App. 2001) (quoting *Davis v. Gulf Ins. Group,* 546 S.W.2d 583, 586 (Tenn.1977) (discussing the predecessor of Tenn. Code Ann. § 27-1-122)). A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Wakefield,* 54 S.W.3d at 304. Occasionally, a party's failure to provide an adequate record will render its appeal frivolous. *See Williams v. Williams,* 286 S.W.3d 290, 297-98 (Tenn. Ct.App.2008).

Although we have ruled adversely to Husband concerning the issues he raised, we are unable to conclude that his appeal is devoid of merit. Accordingly, we do not find this appeal frivolous.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Michael John Selitsch.