IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2020

## TROY MICHAEL WHEELER v. ANGELA MARIE (TURNER) WHEELER

**Appeal from the Circuit Court for Macon County**
**No. 18-CV-11        Clara W. Byrd, Judge**

_____

### No. M2019-01016-COA-R3-CV

_____

Husband appeals the denial of his motion for relief under Tennessee Rule of Civil Procedure 60.02. Husband argues that a divorce decree and marital dissolution agreement should be set aside for his lack of capacity to understand the agreement and advocate for himself. Separately, he claims the agreement itself is unconscionable. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS, and THOMAS R. FRIERSON, II, JJ., joined.

Jessica Renea Simpson and Robert J. Turner, Nashville, Tennessee, for the appellant, Troy Michael Wheeler.

Lindsey Waller Johnson and Angelique P. Kane, Lebanon, Tennessee, for the appellee, Angela Marie (Turner) Wheeler.

## OPINION

### BACKGROUND

This matter stems from the divorce proceedings of Appellant/Defendant Troy Michael Wheeler ("Husband") and Appellee/Plaintiff Angela Marie Turner Wheeler ("Wife"). After a marriage of more than ten years, Wife filed a complaint for divorce against Husband in the Macon County Circuit Court ("the trial court") on January 26, 2018. The parties participated in discovery and mediation in advance of a trial set for May 8, 2019.

On the date of trial, Wife moved for default judgment against Husband, as he failed to file an answer to Wife's complaint.

Before the trial began, the parties announced a settlement through their counsel to the trial court. Husband and Wife signed a marital dissolution agreement ("the MDA") that required Husband to pay $250,000.00 to Wife within 60 days of the finalization of divorce and pay an additional $2,000.00 per month in alimony in solido for ten years. Husband kept the couple's real estate, commercial painting business, and farm and business equipment in the settlement. When the alimony in solido payments were completed, Wife would execute a deed to the parties' real estate and a separate bill of sale to various farm and business equipment to Husband. If Husband did not timely pay Wife, then the couple's real estate, farm equipment, and Husband's share of personal property would be liquidated to compensate Wife. The MDA expressly stated that the parties entered into the MDA "without any undue influence, fraud, coercion, or misrepresentation" with the acknowledgment that the MDA "is fair and equitable and that it is being entered into voluntarily and with the advice of counsel." The parties also stated that the MDA was "fair, adequate and satisfactory to them and in keeping with their accustomed standard of living[.]" Both Wife and Husband signed the MDA on May 8, 2019. The trial court found that the parties made an equitable settlement of property rights and entered a final decree of divorce on the ground of irreconcilable differences on May 8, 2019. The MDA was incorporated into the trial court's divorce decree.

Husband filed a notice of appeal pro se to this Court on June 7, 2019. However, after hiring new counsel, Husband also filed a Motion for Relief under Tennessee Rule of Civil Procedure 60.02 with the trial court on October 4, 2019. In his motion, Husband argued that the terms of the final divorce decree were "onerous and oppressive" and should be found against public policy and void. Husband asserted that his health has dramatically worsened and has left him unable to work at his previous levels. Husband also alleged that he never read or understood the MDA when he signed it, and his then-counsel failed to explain the agreement's provisions for alimony or property division. Husband averred that he suffered from extreme hardship due to his health concerns and financial issues and was unable to advocate for himself when the agreement was signed. Upon motion from Husband to this Court, we "ordered that this case is remanded to the trial court for the limited purpose of considering the appellant's Tenn. R. Civ. P. 60.02 motion." Wife separately moved that the trial court grant *pendente lite* support during the pendency of the appeal, for Husband to vacate the marital home, and for Wife to be granted immediate possession of the couple's property. Wife later contested Husband's Rule 60.02 motion, arguing that he had no valid defense given his responses to questions about his health and well-being during the discovery process.

The trial court heard arguments on the Rule 60.02 motion on October 31, 2019. Husband, the only person called to testify, spoke at length about his inability to pay alimony as set out in the MDA, the various health issues that overwhelmed him, his lack

of education, his inability to read and understand the agreement when he signed it, and the pressure he felt his prior attorney placed on him to sign the agreement at the risk of suffering greater losses if the divorce case went to trial.[1] On cross-examination, Husband conceded that he sent a number of text messages to Wife in the hours after the agreement was signed. The messages included statements that the "numbers are not fair at all[,]" that he would not fight about the terms because he did not want to "go through all of the nasty stuff that would be said in court" and that his lawyer warned him that his alimony payments would be higher if he went to court. Additional messages advised Wife to "[g]et ready for round two" and that signing the agreement was "just a formality."

From the bench, the trial court denied Husband's motion for relief, stating that Husband could read and understand the nature of the agreement. The trial court additionally granted Wife $2,000.00 per month in *pendente lite* support for the duration of the appeal. Following the ruling, the trial court entered written orders denying Husband's motion and granting Wife's motion on November 20, 2019. In the order denying Husband's motion, the trial court stated that "Husband knew what he was doing when he was executing the agreement." A supplemental record of the Rule 60.02 motion and related proceedings were sent to this Court.

### ISSUES PRESENTED

Husband raised two issues on appeal, which we rephrase as follows:

1. Whether the trial court erred in not setting aside the MDA and divorce decree under Tennessee Rule of Civil Procedure 60.02 on the basis of mental incapacity.
2. Whether the trial court erred when not setting aside the MDA on the basis of unconscionability.

In the body of her brief, Wife seeks an award of attorney's fees for defending against a frivolous appeal.

### DISCUSSION
### Mental Incapacity

Husband first contends that the trial court erred by failing to set aside the MDA under Rule 60.02 of the Tennessee Rules of Civil Procedure because of Husband's mental incapacity when he signed the agreement. Rule 60.02 provides, in relevant part, as follows:

On motion and upon such terms as are just, the court may relieve a party or

---

[1] Husband hired new counsel between the signing of the MDA and the filing of the motion for relief. Husband is represented by counsel in this appeal.

the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

The purpose of Rule 60.02 is "'to alleviate the effect of an oppressive or onerous final judgment.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010) (quoting *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005)). The rule is therefore "equally aimed at striking a 'proper balance between the competing principles of finality and justice.'" *Id.* (quoting *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)). Rule 60.02 therefore cannot "be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." *Id.* (citing *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)). "Instead, relief is appropriate only in those relatively few instances that meet the criteria of the rule." *Id.*

Because of the strong interest in finality of judgments, a party seeking relief under Rule 60.02 "bears the burden of proving that [he or she] is entitled to relief by clear and convincing evidence." *Id.* (citing *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997)). Clear and convincing proof is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992); *see also In re B.A.C.*, 317 S.W.3d 718, 724 (Tenn. Ct. App. 2009) (quoting *In re M.A.B.*, No. W2007-00453-COA-R3-PT, 2007 WL 2353158, at *2 (Tenn. Ct. App. Aug. 20, 2007) ("Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth.")).

A party seeking to overturn a trial court's ruling on a Rule 60.02 motion on appeal bears a different burden. "In reviewing a trial court's decision to grant or deny relief pursuant to Rule 60.02, we give great deference to the trial court." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993)). As such, we review a motion for relief through Rule 60.02 under an abuse of discretion standard. *Id.* A trial court abuses its discretion when it "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002)

- 4 -

(quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

The exacting requirements of relief under Rule 60.02 are all the more relevant in this case, where Husband seeks relief solely on the basis of Rule 60.02(5), which allows a court to relieve a party from a final judgment or order for "any other reason justifying relief from the operation of the judgment." This provision, despite its broad language, has been narrowly construed by Tennessee courts. *Henderson v. Kirby*, 944 S.W.2d 602, 605 (Tenn. Ct. App. 1996). As such, this particular ground for relief is intended to be applicable "only in the most compelling, unique, exceptional, and extraordinary circumstances." *Delong v. Vanderbilt Univ.*, 186 S.W.3d 506, 512 (Tenn. Ct. App. 2005) (citing *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d, 621 625 (Tenn. 2000); *Johnson v. Johnson*, 37 S.W.3d 892, 895 n.2 (Tenn. 2001)). A party seeking relief under Rule 60.02(5) therefore bears a "heavy burden[.]" *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992). Accordingly, we proceed to consider whether Husband met his burden to be granted relief in this case.

Marital dissolution agreements are considered contracts made between parties in contemplation of divorce. *Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007) (citing *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998)). However, a trial court "has continuing statutory power to modify the decree" regarding matters of child support and alimony when justified by changed circumstances. *Id.* (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). "[I]t is rare indeed for a court to find that a contract is unenforceable based on the unsound emotional state of a contracting party." *Beem v. Beem*, No. W2009-00800-COA-R3-CV, 2010 WL 1687782, at *8 (Tenn. Ct. App. Apr. 28, 2010). A party seeking relief from a contract on the basis of mental incapacity "must establish he or she 'had no reasonable perception or understanding of the nature or terms of the contract.'" *Id.* (quoting *Roberts v. Roberts*, 827 S.W.2d 788, 791–92 (Tenn. Ct. App. 1991)). Parties can be excused from performing a contract on the basis of incompetency when: "(1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) when they are unable to act in a reasonable manner in relation to the transaction, and the other party has reason to know of their condition." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001) (citing Restatement (Second) of Contracts § 15(1) (1981)).

This Court has ruled on claims for relief from MDAs based on mental incapacity in at least three prior cases. In *Selitsch v. Selitsch*, a husband requested relief from a final divorce decree because he was suffering from a multiple sclerosis "flare up" during the divorce hearing and claimed he lacked the capacity to understand an agreement which counsel for both parties submitted to the court. *Selitsch*, 492 S.W.3d 677, 682 (Tenn. Ct. App. 2015). While the husband and a physician testified to the husband's medical conditions, neither could verify whether the husband had a "flare up" that could lead to incapacity on the day of the hearing. *Id.* The trial court denied relief, stating that no clear

and convincing evidence existed to establish that the spouse could not understand the nature and ramifications of the hearing when it occurred. *Id.* at 683. After a review of the trial record, we affirmed the trial court's discretionary ruling, particularly because of the length of time taken to negotiate the agreement and the lack of evidence to conclusively establish incapacity at the hearing. *Id.*

Likewise, in *Beem v. Beem*, a husband attempted to set aside a MDA on account of mental incapacity due to his depression. *Beem*, 2010 WL 1687782, at *2. As in the present case, the husband in *Beem* argued that the MDA should be set aside under Rule 60.02(5) because he signed the MDA under duress and without a clear mind because of his depression. *Id.* While a psychologist testified to the husband's depression, the psychologist had not interacted with the husband until after he signed the MDA and could not speak to husband's condition when he signed the agreement. *Id.* Further, a mediator and husband's attorney during the divorce testified that they did not doubt the husband's capacity when he completed mediation and signed the MDA. *Id.* The trial court found that the husband's claim was not supported by sufficient proof, and we affirmed the trial court. *Id.* at *8–9.

This Court, however, has affirmed a trial court's order setting aside a divorce decree under Rule 60.02. *Middendorf v. Middendorf*, No. M2018-00409-COA-R3-CV, 2019 WL 2655779, at *6 (Tenn. Ct. App. June 27, 2019). In *Middendorf*, a husband moved for a divorce decree to be set aside after he was unable to advocate for himself during the divorce proceedings because of depression and post-traumatic stress disorder. *Id.* at *5–6. During the hearing on the Rule 60.02 motion, the husband testified that he had refused to hire counsel to represent him and "wanted to punish himself in this divorce[.]" *Id.* at *5. Testimony from the husband and a psychiatrist who treated the husband during the divorce established clear and convincing evidence that the husband could not reasonably understand the manner and consequences of signing the MDA and supported the trial court's finding that the husband was impaired from advocating for himself. *Id.* at *6. We affirmed the trial court's ruling setting aside the divorce decree, holding that the evidence could support more than one conclusion and did not establish an abuse of discretion from the trial court. *Id.*

In the present case, Husband argues the trial court abused its discretion by not relieving him of his obligations under the MDA for reasons of mental incapacity. In particular, Husband claims that his physical and emotional state prevented him from understanding the implications of the MDA when he signed the agreement. Based on our review of the record, we cannot conclude that the trial court abused its discretion in rejecting Husband's arguments.

Husband's arguments, as we interpret them, revolve around the belief that he was overwhelmed by intense physical pain and could not understand the MDA based on his

limited formal education.[2] Husband testified at length during the Rule 60.02 hearing about his various physical ailments and contended they overwhelmed him to a point where he could not understand the agreement or advocate for himself. He also spoke about his limited education and how he did not read or fully understand the agreement when it was presented to him. Instead, Husband argued that his former counsel presented him with the agreement minutes before the divorce trial and told him to sign the MDA or go to trial and risk paying twice as much in alimony. Husband also claimed that he signed the MDA without knowledge of its binding nature or his financial obligations under the agreement.

The proof in this case falls far short of the proof presented in the above cases, even those in which Rule 60.02 relief was denied. Unlike **Selitsch** or **Beem**, no medical professional testified about Husband's medical ailments, and no other third-party testified about Husband's education or condition at the time the MDA was signed. *See **Selitsch***, 492 S.W.3d at 683 (affirming the denial of Rule 60.02 relief even when a medical professional testified); **Beem**, 2010 WL 1687782, at *9 (same); *see also **Middendorf***, 2019 WL 2655779, at *6 (affirming the grant of Rule 60.02 relief when a medical professional testified). While we certainly do not hold that expert proof is required in all cases in which mental incapacity is at issue, *cf.* **In re Conservatorship of Davenport**, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *13 (Tenn. Ct. App. Dec. 27, 2005) (holding that expert proof is not an absolute prerequisite to a finding of incapacity in a conservatorship proceeding, but noting that the petition must be accompanied by an expert report or a statement that the litigant refuses to be examined), some proof beyond the unsupported, and ultimately, unconvincing, assertions of the litigant are often required to meet the clear and convincing standard. Husband did not present any medical records or other documents to support his assertions. Likewise, Husband presented no testimony from third-parties concerning his mental state at the time he signed the agreement. Instead, Husband relied solely on his own testimony to claim that he was mentally incapable of understanding the nature and ramifications of the hearing. Husband's testimony alone did not support the notion that he was unable to advocate for himself or understand the MDA when he signed the agreement. Moreover, nothing in the hearing transcript or the supplemental record indicates how Husband's capacity was particularly different when he signed the MDA and agreed to the divorce than at other periods of time. Given the clear language in the MDA that the terms were entered into voluntarily, with the advice of counsel, and resulted in a fair settlement, combined with Husband's testimony, we cannot conclude that the trial court erred in refusing to credit Husband's unsupported assertions of mental incapacity.

Rather, the evidence as a whole supports the trial court's decision. Importantly, Husband admitted to sending various text messages the day he signed the agreement

---

[2] In his brief and during various points of the Rule 60.02 hearing, Husband states that he dropped out of school in the sixth, seventh, and eighth grades.

which indicated his understanding of the agreement and its consequences. On the morning of May 8, the day he signed the agreement, Husband's messages to Wife indicated that he thought "[t]hese numbers are not fair at all.[ ]But [I] am not going to fight about it."[3] After he signed the agreement, he stated that he did so "[b]ecause my lawyer told me that if I go to court that [alimony] would be twice this much. I really didn't want for us to go through all of the nasty stuff that would be said in court." Later that evening, Husband told Wife to "[g]et ready for round two" and that "[s]urly [sic] you don't think that it's over. [Y]ou will answer for all[.] So don't count your dollars[.]" Husband described signing the MDA as "just a formality" and that more than $500,000 in potential alimony was "not going to happen[.]" In later messages, he acknowledged two previous offers he made before the MDA was finalized. In effect, Husband contends that his physical pain and lack of formal education momentarily overwhelmed him to the point where he could not understand the agreement he signed or its eventual consequences. Based on these messages, however, several things are clear. First, Husband's asserted lack of education does not amount to an inability to read or write. Moreover, Husband and Wife, along with their respective counsel, were engaging in negotiations prior to the signing of the MDA, indicating that the decision to enter into an MDA was not a last minute strong-arm by Wife. Moreover, the messages show that Husband was aware of the ramifications of the MDA, including the substantial alimony award to Wife, around the time he signed the contract. Husband therefore clearly had the capacity to understand the nature of the MDA and its consequences near in time to when it was signed. Given Husband's testimony and text messages sent around the time the MDA was signed, we are not persuaded that Husband acted without a reasonable understanding of the nature and consequences of his actions. Consequently, we cannot say that the trial court abused its discretion in ruling that Husband was mentally capable of understanding the agreement when he signed it. As such, we affirm the trial court's ruling denying Husband's Rule 60.02 motion on the basis of a lack of mental capacity.

## Unconscionability

Additionally, Husband argued that the trial court erred by not setting aside the MDA as unconscionable. While Husband argues that the trial court failed to address the unconscionability of the agreement, a review of the record indicates that Husband never argued that the MDA was unconscionable in his Rule 60.02 motion or in the subsequent hearing. As stated in the Tennessee Rules of Appellate Procedure, this court's review "generally will extend only to those issues presented for review." Tenn. R. App. P. 13(b). Further, the Tennessee Supreme Court very recently noted that "'[a]ppellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal.'" **State v. Vance**, 596 S.W.3d 229, 253 (Tenn.

---

[3] While the message's time stamp indicates that it was sent on May 8 at 8 a.m., Husband denied that it was sent before the MDA was signed. Husband did not deny having the conversation with Wife. Husband submitted no proof to controvert the time stamp on the message.

2020) (quoting ***State v. Minor***, 546 S.W.3d 59, 65 (Tenn. 2018) (citing Tenn. R. App. P. 13(b)). "It is well settled that issues and arguments not raised or asserted in the trial court may not be raised for the first time on appeal." ***Dog House Investments, LLC v. Teal Properties, Inc.***, 448 S.W.3d 905, 915 (Tenn. Ct. App. 2014) (citing ***Barnes v. Barnes***, 193 S.W.3d 495, 501 (Tenn. 2006); ***Moss v. Shelby County Div. of Corr.***, No. W2013-01276-COA-R3-CV, 2013 WL 6529567, at *4 (Tenn. Ct. App. Dec. 11, 2013)). As such, arguments not properly raised at the trial level are waived on appeal. ***City of Memphis v. Shelby Cty.***, 469 S.W.3d 531, 560 (Tenn. Ct. App. 2015) (citing ***Lawrence v. Stanford***, 655 S.W.2d 927, 929 (Tenn. 1983)). Here, Husband failed to raise the issue of unconscionability in his written and oral arguments to the trial court. Because of this, he has waived any claim regarding this issue on appeal.

### Attorney Fees

Wife, in the posture of appellee, also seeks an award of attorney fees for defending a frivolous appeal. While we recognize that Tennessee Code Annotated section 27-1-122 provides this Court the discretion to award "just damages" for a frivolous appeal, we also note that Wife did not properly raise the issue in her appellate brief. To raise an issue as an appellee, a party must include the issue and argument in its brief. ***Id.*** When a brief fails to include an argument satisfying Tennessee Rule of Appellate Procedure 27(a)(7) or fails to designate an issue in accordance with Tennessee Rule of Appellate Procedure 27(a)(4), the issue may be waived. ***Id.*** (citations omitted); *see also **Vazeen v. Sir***, No. M2018-00333-COA-R3-CV, 2018 WL 6419134, at *5 (Tenn. Ct. App. Dec. 5, 2018) (holding that an appellee waived consideration of a separate issue by adopting appellant's statement of the issues). We have often held that an appellee waives a request for attorney's fees by not designating this request as an issue on appeal. *See, e.g., **Apexworks Restoration v. Scott***, No. M2019-00067-COA-R3-CV, 2019 WL 5448698, at *8 (Tenn. Ct. App. Oct. 24, 2019); ***Akard v. Akard***, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at *9 (Tenn. Ct. App. Nov. 25, 2014) (citing ***Forbess v. Forbess***, 370 S.W.3d 347, 357 (Tenn. Ct. App. 2011) (holding that an appellee seeking affirmative relief in the Court of Appeals must raise the issue in a Statement of the Issues section of his or her brief)). Wife's request for attorney's fees is therefore waived due to her failure to designate this request as an issue on appeal.[4]

### CONCLUSION

The judgment of the Macon County Circuit Court is affirmed, and this cause is remanded to the trial court for further proceedings as necessary and consistent with this

---

[4] In addition, Husband's demand in his reply brief for sanctions against Wife for her frivolous appeal claim is waived. *See **Hughes v. Tenn. Bd. of Probation and Parole***, 514 S.W.3d 707, 724 (Tenn. 2017) ("Issues raised for the first time in a reply brief are waived."). Likewise, any novel arguments made by Wife in her response to Husband's reply brief are waived. ***Id.***

Opinion. Costs of this appeal are assessed to Appellant, Troy Michael Wheeler, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE